ZAGER, Justice.
This case requires us to determine whether a life insurance agent owes a duty of care to the intended beneficiary of a life insurance policy. Additionally, we must decide whether a life insurance agent can be liable for negligent misrepresentation when he provides information to the insured and the intended beneficiary regarding the beneficiary designation listed on the life insurance policy. If we determine that an intended beneficiary is owed a duty of care and that a life insurance agent providing information regarding the identity of a beneficiary is a proper defendant in a negligent misrepresentation action, then we must determine whether there is a genuine issue of material fact that would preclude summary judgment. For the reasons set forth below, we find that a life insurance agent owes a duty of care to an intended beneficiary of a life insurance policy and that a life insurance agent can be liable for negligent misrepresentation. Since we also determine that genuine issues of material fact exist in this case, summary judgment should not have been granted.
I. Factual Background and Proceedings.
Pursuant to a stipulation and order entered in 1989, Thomas Pitts (Tom) became responsible for child support payments for the benefit of his daughter, Jamie Pitts, born April 28, 1987. As part of his support obligation, Tom was required to maintain $35,000 of life insurance payable to his daughter for as long as his child support obligation continued. Unless the child was *95 still in high school, or pursuing further postseeondary education, this support obligation would end in April of 2005.
In 1993, Tom and the plaintiff, Michele Pitts (Michele), were married. That same year, they met with Donald Schiffer, an agent for Farm Bureau Life Insurance Company (Farm Bureau), to discuss life insurance. Tom and Michele were interested in purchasing a life insurance policy that would satisfy Tom’s child support obligation and provide a benefit to Michele if she were to survive Tom. Tom purchased a life insurance policy from Farm Bureau, and on August 30, 1993, Tom signed a beneficiary designation listing Tom’s daughter as the primary beneficiary for the first $50,000 in proceeds and listing Michele as the beneficiary of the “balance of [the] proceeds, if any.” On December 28, 1995, Tom completed and filed a new beneficiary designation form. After the change, Tom’s daughter was the primary beneficiary of the first $35,000 of life insurance proceeds, and the balance was to be paid to Michele if she survived Tom.[1] A final written change of beneficiaries was made on August 13,1996, but the terms of that change are illegible. However, Michele does not allege that the August 13 change removed Jamie as the primary beneficiary of the first $35,000 in proceeds. According to Schiffer, this was the last change in beneficiary designation that Tom made, and neither party has produced any other written documentation regarding a subsequent change in beneficiary.
According to Michele, shortly after Tom’s support obligation ended in April 2005, Tom asked Schiffer to change the beneficiary designation on the life insurance policy so that his daughter would no longer be the primary beneficiary of the first $35,000 of insurance proceeds. Michele “believe[d] Tom filled out paperwork to complete this change, but [she did] not know what he did with the paperwork.” Michele claims that on separate occasions Schiffer told her and Tom that Tom’s daughter was no longer listed as a beneficiary under the policy and that Michele was now the sole beneficiary. These exchanges occurred in person and over the telephone.
After Tom passed away in November 2007, Michele went to Schiffer’s office to fill out the paperwork needed to claim the proceeds of the life insurance policy. Schiffer allegedly told Michele, in the presence of her parents, that she would be receiving the full amount of Tom’s life insurance proceeds — about $108,000. While she was in the office, Schiffer’s telephone rang, and she heard him say, “Are you sure?” and “Tom and I always talked about percentages for the kids.” After he hung up the telephone, Schiffer informed Michele that Tom’s daughter was still the primary beneficiary for the first $35,000 in insurance proceeds and as a result, Michele would only receive about $74,000.
On November 25, 2009, Michele filed suit against Schiffer and Farm Bureau.[2] Her claim against Schiffer alleged negligence and negligent misrepresentation, and the claim against Farm Bureau alleged liability under the doctrine of re-spondeat superior.[3] Farm Bureau moved for summary judgment.. ' Farm Bureau *96 claimed it was entitled to summary judgment on the negligence claim because the policy required any change in beneficiary to be in writing and signed by the owner. Since Michele had not provided any evidence of such a writing, Farm Bureau was under no duty to change the beneficiary. Farm Bureau also argued that it did not owe a duty to Michele because she was not the policyholder, and therefore any claim of negligence or negligent misrepresentation failed as a matter of law. Farm Bureau also argued Schiffer was not in the business or profession of supplying information for the guidance of another in an advisory capacity and therefore, as a matter of law, could not be liable for negligent misrepresentátion. Finally, Farm Bureau claimed that Michele had not come forward with admissible evidence that she was the intended beneficiary of the first $35,000 in insurance proceeds.
The district court found that “[i]t [was] undisputed that Mr. Pitts did not execute a written request to make Plaintiff the primary beneficiary” and therefore Schiffer’s failure to remove Tom’s daughter as a beneficiary “was not a product of negligence, but rather resulted from his lack of authority to remove [her] as the primary beneficiary without Thomas Pitts’ written request.” The district court then granted Farm Bureau’s motion for summary judgment in its entirety and dismissed the case.
Pursuant to Iowa Rule of Civil Procedure 1.904(2), Michele filed a motion to enlarge the findings of fact and conclusions of law. Michele claimed that as the intended beneficiary of the policy, Schiffer owed her a duty of care. Michele also claimed there were disputed issues of material fact that precluded entry of summary • judgment. Specifically, Michele claimed that Schiffer told her, her husband, and her parents that she was the sole beneficiary on the policy. Based on these statements, Michele claimed a jury could reasonably find in her favor on the negligence and negligent misrepresentation claims. The district court denied the motion, and Michele appealed. We transferred the case to the court of appeals, which affirmed the district court. Michele sought further review, which we granted.
II. Standard of Review.
The district court granted Farm Bureau’s motion for summary judgment. “We review a district court’s grant of a motion for summary judgment for errors of law.” Seneca Waste Solutions, Inc. v. Sheaffer Mfg. Co., 791 N.W.2d 407, 410-11 (Iowa 2010). A court should grant summary judgment
“if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
Id. at 411 (quoting Iowa R. Civ. P. 1.981(3)). In other word's, summary judgment is appropriate “if the record reveals a conflict only concerns the legal consequences of undisputed facts.” City of Cedar Rapids v. James Props., Inc., 701 N.W.2d 673, 675 (Iowa 2005) (citations and internal quotation marks omitted). When reviewing a court’s decision to grant summary judgment, “we examine the record in the light most favorable to the nonmoving party and we draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact.” Kragnes v. City of Des Moines, 714 N.W.2d 632, 637 (Iowa 2006). We also note that the court should only consider “such facts as would be admissible in evidence” when considering the affidavits supporting and opposing summary judgment. Iowa R. Civ. P. 1.981(5); see also *97 Kern v. Palmer Coll. of Chiropractic, 757 N.W.2d 651, 656 n. 3 (Iowa 2008); McCarney v. Des Moines Register & Tribune Co., 239 N.W.2d 152, 157 (Iowa 1976).
III. The District Court’s Ruling.
The district court held Tom’s oral statements were insufficient to impose a duty-on Schiffer to change the beneficiary of the policy. Specifically, the district court stated,
It is undisputed that Mr. Pitts did not execute a written request to make Plaintiff the primary beneficiary. Thomas Pitts knew the procedures that he must follow to make Plaintiff the sole beneficiary, as he had previously changed his beneficiary designation under those terms on two separate occasions. Thus Defendant Schiffer’s failure to act was not a product of negligence, but rather resulted from his lack of authority to remove [Tom’s daughter] as the primary beneficiary without Thomas Pitts’ written request.
The district court then granted Farm Bureau’s motion for summary judgment and dismissed the entire case.
The district court erred when it granted summary judgment on all of plaintiffs claims. Michele was not claiming that Tom followed the proper procedures and that the beneficiary had actually been changed. She was claiming that, despite the beneficiary designation, Tom intended her to be the sole beneficiary of his policy. According to her petition, Schiffer’s negligence and negligent misrepresentations led to Tom’s daughter remaining as the primary beneficiary on a portion of the proceeds of Tom’s life insurance at the time of his death, which caused her to lose $35,000 in life insurance proceeds. The question presented by this case is not as simple as whether Tom’s oral expression of his desire to change the beneficiary on his policy was effective or whether it gave Schiffer the authority to change the beneficiary. The questions are whether Schif-fer was negligent in responding to Tom’s oral request, if made, and whether Schiffer made negligent misrepresentations after allegedly receiving Tom’s oral request.
We therefore reverse the district court’s grant of summary judgment on the ground stated in its initial judgment. If we reverse a district court’s decision to grant summary judgment on one ground, however, we may still affirm the ruling on alternative grounds raised but not ruled on below and subsequently urged on appeal. Kern, 757 N.W.2d at 662. The district court granted Farm Bureau’s motion for summary judgment based solely on the fact that there was no evidence of a written request to change beneficiaries. Having concluded summary judgment on that ground was in error, we must now turn to the other grounds raised below to determine if they will support granting Farm Bureau’s motion for summary judgment.
IV. Michele’s Negligence Claim.
Michele alleged that Schiffer owed both her and Tom a duty to use reasonable professional skill. According to Michele, Schiffer breached that duty by “failing to take action to change the beneficiary designation upon Thomas J. Pitts’s request,” “failing to deliver the necessary paperwork to Thomas J. Pitts to effectuate a change in the beneficiary designation after [his] request to make a change,” and “failing to display a degree of skill reasonably or ordinarily necessary in performing as an agent in the insurance business.” These failures resulted in Michele not being designated as the primary beneficiary for all of the proceeds of Tom’s policy. ■'
A. Did Schiffer Owe Michele a Duty of Care? Farm Bureau claimed that Michele was not the beneficiary, that Schiffer only owed a duty to Tom, and that he did not owe a duty to Michele since no *98 agent-insured relationship existed between Schiffer and Michele.[4] The district court did not discuss duty but simply stated that, “Schiffer’s failure to act was not a product of negligence, but rather resulted from his lack of authority to remove [Tom’s daughter] as the primary beneficiary without Thomas Pitts’ written request.” The court of. appeals affirmed the grant of summary judgment, finding there is no “duty owed by an insurance agent to an intended beneficiary of a life insurance policy.”
Generally, “[a]n actionable claim of negligence requires the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages.” Thompson v. Kaczinski, 774 N.W.2d 829, 884 (Iowa 2009) (citation and internal quotation marks omitted). In Thompson, we adopted the Restatement (Third) of Torts: Liability for Physical and Emotional Harm and, in general, rejected the use of foreseeability when determining, as a matter of law, that one party did not owe a duty to another. Id. at 835. In Langwith v. American National General Insurance Co., 793 N.W.2d 215 (Iowa 2010), superseded by statute, 2011 Iowa Acts ch. 70, § 45 (codified at Iowa Code § 522B.11(7) (Supp. 2011)), we noted that when duty “is based on agency principles and involves economic *99 loss, the duty analysis adopted by this court in [Thompson], based on Restatement (Third) of Torts: Liability for Physical and Emotional Harm, is not disposi-tive.” 793 N.W.2d at 221 n. 8.
In this case, any duty that Schiffer owed to Tom or Michele would arise out of their agency relationship as insurance agent, insured and intended beneficiary. See Langwith, 793 N.W.2d at 219 (“[T]he relationship between an insured and an insurance agent is one of prineipal/agent.”); see also Collegiate Mfg. Co. v. McDowell’s Agency, Inc., 200 N.W.2d 854, 857-58 (Iowa 1972). Thus, this is a case that “is based on agency principles.” Langwith, 793 N.W.2d at 222 n. 3. Michele claims she has suffered the loss of $35,000 in life insurance proceeds, which is a purely economic harm. Since this is a case based on agency principles and involving economic harm, we will not rely on the concept of duty embodied in Thompson to determine if Schiffer owed Michele a duty of care.
The scope of the duties an insurance agent owes his client has recently been the subject of both litigation and legislation. In Sandbulte v. Farm Bureau Mutual Insurance Co., 343 N.W.2d 457 (Iowa 1984), overruled by Langwith, 793 N.W.2d at 223, we held that an insurance agent’s “general duty is the duty to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured.” Sandbulte, 343 N.W.2d at 464. This duty could only be expanded “when the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured.” Id. In Langwith, we reexamined this restrictive approach to the duty an insurance agent owes an insured and stated that “the general principles governing agency relationships convinces us that a more flexible method of determining the undertaking of an insurance agent is appropriate.” 793 N.W.2d at 221. We held
that it is for the fact finder to determine, based on a consideration of all the circumstances, the agreement of the parties with respect to the service to be rendered by the insurance agent and whether that service was performed with the- skill and knowledge normally possessed by insurance agents under like circumstances. Some of the circumstances that may be considered by the fact finder in determining the undertaking of the insurance agent include the nature and content of the discussions between the agent and the client; the prior dealings of the parties, if any; the knowledge and sophistication of the client; whether the agent holds himself out as an insurance specialist, consultant, or counselor; and whether the agent receives compensation for additional or specialized services.
Id. at 222 (citation omitted).
The legislature responded by amending Iowa Code section 522B.11.2011 Iowa Acts ch. 70, § 45. The new act “declares that the holding of Langwith is abrogated to the extent that it overrules Sandbulte and imposes higher or greater duties and responsibilities on insurance producers than those set forth in Sandbulte.” Id. (emphasis added). The new subsection also states that “[ujnless an insurance producer holds oneself out as an insurance specialist, consultant, or counselor and receives compensation for consultation and advice apart from commissions paid by an insurer, the duties and responsibilities of an insurance producer are limited to those duties and responsibilities set forth in Sandbulte.” Id. (emphasis added).
These cases and the statute address what duties an insurance agent owes the insured, not who the agent can be liable to when those duties are breached. *100 In this case, the scope of Schiffer’s duty to Tom is clear. There is no indication in the record that Tom and Schiffer had modified the scope of their principal-agent relationship in any way. Since the agency agreement had not been modified, Schiffer, as Tom’s agent, owed him
the use of such skill as is required to accomplish the object of his employment. If he fail[ed] to exercise reasonable care, diligence, and judgment in this task, he is liable to his principal for any loss or damage occasioned thereby.
Collegiate Mfg., 200 N.W.2d at 857; see also Langwith, 793 N.W.2d at 223 n. 6; Sandbulte, 343 N.W.2d at 464.
Michele claims that as the intended beneficiary of Tom’s life insurance policy, Schiffer owed her a duty as well. We acknowledge and dismiss Farm Bureau’s claim that because Michele was not designated as the primary beneficiary for the first $35,000 in proceeds, she cannot show that she was the person Tom intended to be the beneficiary of the first $35,000 in proceeds. Michele is not listed as the primary beneficiary of the first $35,000 in proceeds. This is evidence of Tom’s intent, but this fact, in and of itself, is not dispositive. The fact that Michele is not named as the primary beneficiary only establishes that she is not the designated beneficiary and that the necessary steps were not taken to change the beneficiary from Tom’s daughter to Michele. The fact that Michele is not actually designated as the beneficiary does not establish why Michele is not the beneficiary, nor does it establish that Tom did not intend Michele to be the beneficiary. Michele claims this was precisely what Tom intended, but his intent was frustrated by Schiffer’s negligence. Thus, cases such as Kubin v. Kubin, 232 Iowa 1034, 6 N.W.2d 860 (1942), where the plaintiff sought to show she “took action sufficient to change the name of the beneficiary” on the policy, are not controlling. 232 Iowa at 1038, 6 N.W.2d at 862.
We also note that despite Farm Bureau’s contention, Michele is not claiming that Schiffer owed her a duty based solely on her status as a family member of the deceased. Michele’s true claim is that when an insured intends for a particular person to be the beneficiary of a life insurance policy, and the insured expresses that desire to his or her life insurance agent, the agent procuring insurance for the insured owes the insured’s intended beneficiaries a duty of care to procure the insurance requested. We now address that claim.
Michele claims by analogy that Schreiner v. Scoville, 410 N.W.2d 679 (Iowa 1987), supports her contention that Schiffer owed her a duty of care as the intended beneficiary of the first $35,000 in proceeds from Tom’s life insurance policy. In that case, Scoville, an attorney, prepared and witnessed Mary Eickholt’s will. Schreiner, 410 N.W.2d at 680. The will left Schreiner a one-half interest in a piece of real estate and a one-half interest in the residue of the estate. Id. Seven months after the will was drafted, Scoville prepared and witnessed a codicil to the will that eliminated Schreiner’s share of the residue of Eick-holt’s estate but left Schreiner’s one-half interest in the real estate intact. Id. One month after the codicil was drafted, Sco-ville brought an action for partition for the sale of the real estate. Id. Eight months later, the property was sold at partition sale. Id. Eickholt died within a year of the sale, and her will and the codicil were admitted to probate. Id.
The “[district court found Eickholt’s devise to Schreiner had adeemed when her interest in the property was transformed from an interest in real property into an interest in personal property.” Id. Since there were no express bequests relating to *101 the distribution of this personal property, the proceeds from the sale became part of the residue of the estate. Id. Since the real property had adeemed, and the codicil eliminated Schreiner’s share of the residue, Schreiner received nothing. Id. at 681.
Schreiner filed suit, alleging that “Sco-ville was negligent in failing to properly advise Eickholt” and that “Scoville negligently failed to draft Eickholt’s testamentary instruments in a way that protected and fulfilled her true testamentary intent.” Id. Since Scoville and Schreiner did not have an attorney-client relationship, Sco-ville moved to dismiss for failure to state a claim, and the district court granted the motion. See id.
On review, we began by noting the longstanding rule that “absent special circumstances such as fraud or collusion, an attorney is liable for professional malpractice only to a client.” Id. (emphasis added). We stated,
This privity requirement flows from the Supreme Court case of National Savings Bank v. Ward, 100 U.S. (10 Otto) 195, 200, 203, 25 L.Ed. 621, 623, 624 (1880), and is premised upon two basic concerns. First, absent a requirement of privity, parties to a contract for legal services could easily lose control over their agreement. Second, imposing a duty to the general public upon lawyers would expose lawyers to a virtually unlimited potential for liability.
Id. (citation omitted). At the time, there was a trend towards allowing an intended beneficiary of a testamentary instrument to bring a claim “when the testamentary instruments themselves are rendered invalid in whole or in part as a direct result of attorney error.” Id. at 681-82. We noted the following justifications for altering the privity requirements in certain circumstances:
“[0]ne of the main purposes which the transaction between defendant and the testator intended to accomplish was to provide for the transfer of property .to plaintiffs; the damage to plaintiffs in the event of invalidity of the bequest was clearly foreseeable; it became certain, upon the death of the testator without change of the will, that plaintiffs would have received the intended benefits but for the asserted negligence of defendant; and if persons such as plaintiffs are not permitted to recover, for the loss resulting from negligence of. the draftsman, no one would be able to do so, ¡and the policy of preventing future harm would be impaired.”
Id. at 682 (quoting Lucas v. Hamm, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685, 688 (1961)) (alteration in original).
In light of these considerations, we concluded that “a lawyer owes a duty of care to the direct, intended, and specifically identifiable beneficiaries of the testator as expressed in the testator’s testamentary instruments.” Id. That limited group of plaintiffs would be permitted to bring a claim “only when as a direct result of the lawyer’s professional negligence the testator’s intent as expressed in the testamentary instruments is frustrated in whole or in part and the beneficiary’s interest in the estate is either lost, diminished, or unrealized.” Id. at 683. We specifically noted that “a beneficiary who is simply disappointed with what he or she received from the estate will have no cause of action against the testator’s lawyer.” Id.
Michele argues the relationship between an insured, an insurance agent, and the intended beneficiary of a life insurance policy is analogous to the relationship between a testator, an attorney, and the intended beneficiary of a testamentary instrument. This analogy has been accepted by other jurisdictions. See Jones v. Hart *102 ford Life & Accident Ins. Co., 443 F.Supp.2d 3, 6-7 (D.D.C.2006) (noting that cases finding an attorney owes a duty to an intended beneficiary of a will are particularly relevant to determining whether an insurance agent owes an intended beneficiary an independent duty of care). The relationships share many similarities. Like a testamentary instrument, the main purpose of the defendant’s transaction with the insured is to benefit the intended beneficiary-plaintiff. See Schreiner, 410 N.W.2d at 682. Likewise, damage to parties other than the policyholder, such as the intended beneficiary in the event of negligence, is foreseeable to the defendant. See id. In the case of both wills and life insurance policies, the decedent’s estate has very little incentive to bring the action. See id. More significantly, because Tom’s estate was not designated as the beneficiary of the life insurance policy, and no party has claimed that the estate was the intended beneficiary of the policy, the estate would not have a cause of action against these defendants.[5] Finally, if no cause of action could be maintained by the intended beneficiary, the very purpose for which the insurance agent was employed would be frustrated. Cf. id.
In its resistance to the application for further review, Farm Bureau argues that the court of appeals was correct when it noted that subsequent opinions limited the scope of our holding in Schreiner. The court of appeals cited to Carr v. Bankers Trust Co., 546 N.W.2d 901 (Iowa 1996), and Holsapple v. McGrath, 521 N.W.2d 711 (Iowa 1994). In Holsapple, we reiterated the two concerns we expressed in Schreiner: that the parties might lose control over their agreement, and that “the imposition of a duty to the general public could expose lawyers to a virtually unlimited potential for liability.” 521 N.W.2d at 713. However, we allowed the plaintiffs claim of negligence in the preparation of a quitclaim deed to proceed because the *103 complaint alleged “(1) the plaintiff was specifically identified, by the donor, as an object of the grantor’s intent; and (2) the expectancy was lost or diminished as a result of professional negligence.” Id. at 714. Rather than limit the holding in Schreiner, Holsapple actually reaffirms the principles found in that case: namely that an intended, identifiable beneficiary of a transaction can bring an action against an attorney despite the lack of an attorney-client relationship with the defendant.
The dispute in Carr began when an investment advisor for the Iowa Trust misappropriated over $65 million in trust assets, which led to the removal of the trustees. 546 N.W.2d at 902-03. Three of the trustees filed suit against the custodian and the attorneys for the trust claiming that the misappropriation of funds was a result of negligence on the part of the custodian and the attorneys. Id. The trustees alleged that the defendants’ negligence caused them financial damages and damaged their reputations. Id. at 906. The defendants claimed they were entitled to summary judgment because they did not owe the trustees a duty of care. Id.
In determining whether summary judgment for the defendants was appropriate, we discussed the limitations on liability that were imposed in Schreiner and Hol-sapple. Id. at 906. We discussed the rationale of those eases, and we reaffirmed the principle that liability must be limited to those who were “specifically intended to benefit from the [transaction].” Id. We noted “[njothing in the present record shows that either [the custodian or the attorneys] could have foreseen the trustees’ reliance on their performance in their individual capacities.” Id. at 907. We held that without evidence that the defendants “could reasonably know or have foreseen that the individual trustees were relying on the performance of the custodial or legal services for the protection of their own jobs, finances, and reputations,” it was inappropriate to impose a duty to the plaintiffs on the defendants. Id. Summary judgment was therefore appropriate. Id. The holding in Carr does not address the duty a defendant owes to the intended beneficiary of a life insurance policy. Additionally, Michele is exactly the person Schiffer could reasonably know and foresee was relying on his professional performance for her protection. Therefore, Carr is not at odds with imposing a duty of care on Schiffer to Michele in this case.
Farm Bureau also argues that “public policy advises against the imposition of a duty in this situation.” They claim that recognizing that “a legal duty exists between an insurance agent and the family member of a policy owner would create the potential for sharp conflicts of interest whenever the policy owner’s express instruction contradicts the family member’s desire.” (Emphasis added.) In J.A.H. ex reí. R.M.H. v. Wadle & Associates, 589 N.W.2d 256 (Iowa 1999), we were asked to determine whether a minor child could sue a mental health care provider for loss of parental consortium arising out of negligent treatment of the child’s mother. 589 N.W.2d at 257. In determining whether the health care provider owed the child a duty, we analyzed the relationship between the plaintiff and the defendant, the foreseeability of harm, and public policy considerations. Id. at 261-62. We noted that even though the plaintiff and defendant were not in privity with each other, the lack of privity was not outcome determinative. Id. We declined to answer whether it was foreseeable to the defendants that a child could be harmed if his mother received improper mental health treatment and proceeded to consider public policy considerations. Id. at 262.
*104 The child argued it was in the interests of public policy to allow him to pursue his claim because “[u]nless such claims are allowed ... the negligent and harmful treatment may well continue unchecked because the patient is too emotionally altered to recognize the harm that has taken place.” Id. In rejecting such a “paternalistic approach,” we noted that allowing this type of suit could create an inherent conflict of interest for a mental health provider. Id. at 262-68. Specifically, concerns over how treatment might affect third parties might influence how therapists treat patients. Id. We also noted that in order to defend against a suit brought by a third party, the doctor would need to violate doctor — patient privilege. Id. We concluded that “[eliminating the potential for divided loyalties and maintaining confidentiality ... far outweigh any threat of foreseeable harm to nonpa-tient family members.” Id. at 264. Accordingly, we held, “as a matter of law, there is no duty running from a mental health care provider to nonpatient family members.” Id.
We were also mindful of the potential “threat to the professional relationship between the testator and the lawyer” that might exist if “intended beneficiaries” were allowed to bring suits against attorneys. Schreiner, 410 N.W.2d at 682. We are mindful of the same concern here. Farm Bureau cautions against imposing a duty to all family members on insurance agents, claiming it will produce conflicts for insurance agents. Even if we accept Farm Bureau’s contention, the point is not relevant to the outcome of this case. Michele is not arguing that she is owed a duty based on her status as a family member. Instead, she is claiming that Farm Bureau owed her a duty of care based on her status as the intended beneficiary of the policy, which is a much more circumscribed group. Imposing a duty on insurance agents to the intended beneficiary of a life insurance policy would not threaten the insured — insurer relationship, nor would imposing such a duty create the types of “divided loyalties” that led to our conclusion in J.A.H. See J.A.H., 589 N.W.2d at 264.
Other jurisdictions have found “that an intended beneficiary can recover from another’s insurance agent if the intended beneficiary can prove that intent to benefit him, or her, was a direct purpose of the transaction between the insured and agent mid the other elements of negligence.” Parlette v. Parlette, 88 Md.App. 628, 596 A.2d 665, 670-71 (Md.Ct.Spec.App.1991); see also 12 Eric M. Holmes, Holmes’ Appleman on Insurance 2d, § 85. 1, at 333-35 (1999). As one commentator has noted,
[t]he critical element in establishing a duty [to a third party who claims to have been damaged by an agent’s failure to procure insurance] is the foreseeability of harm to a potential plaintiff. Liability will not lie against an [insurance agent] if a third-party’s injury or loss was not foreseeable.
1 Jeffrey E. Thomas & Francis J. Mootz, New Appleman on Insurance Law Library Edition § 2.07[1], at 2-84 (2011) [hereinafter Appleman ] (footnotes omitted).[6] Requiring a plaintiff to show that she was the intended beneficiary of the transaction between the agent and the insured, and the agent was aware of the plaintiffs status as the intended beneficia *105 ry, limits the universe of potential plaintiffs to those who would be foreseeable to the insurance agent. Any communication between the plaintiff and the insurance agent regarding the insured’s coverage and the plaintiffs status as the insured’s intended beneficiary makes harm to the plaintiff foreseeable to the agent procuring the insurance coverage. See id. (“Courts generally are reluctant to hold [agents] liable to third-parties on negligence theories absent specific communications between the third-party and the [agent] about the coverage to be procured.” (footnotes omitted)). Also, if the plaintiff shows that he or she was the intended beneficiary of the policy at the time of the insured’s death, then there is no conflict of interest for the agent because the agent’s duty remains the same: carry out the intent of the insured by procuring the insurance requested. See Sandbulte, 343 N.W.2d at 464.
One court that has faced this issue found it unnecessary to impose a duty on insurance agents to intended beneficiaries. In Mims v. Western-Southern Agency, Inc., 226 S.W.3d 833 (Ky.Ct.App.2007), the Kentucky court of appeals noted that if a plaintiff could show that he or she was the intended beneficiary of the policy as required by Parlette, then he or “she would in effect also be proving that [the insured] substantially complied with the [change of beneficiary] provisions of his insurance policy.” 226 S.W.3d at 836. Showing “substantial compliance” with the policy’s terms would make the plaintiff a third-party beneficiary, which would make it unnecessary to establish an independent duty to the “intended beneficiary” of the policy. See id. Due to Kentucky’s “very liberal” substantial compliance doctrine,
[t]he threshold inquiry under either a negligence or contract theory is essentially identical: “The question herein is not [a] dispute between the contracting parties ... as to the terms of the contract, but one as to whom the insured intended to make a gift by way of insuring his life for same.”
Id. (quoting Bosse v. Basse, 248 Ky. 11, 57 S.W.2d 995, 996 (1933)) (alteration in original).
Iowa’s “substantial compliance” doctrine has been summarized as follows:
It is apparently the law in Iowa that where it appears that an insured clearly intended to change the beneficiary named in a policy of insurance permitting such a change, and that prior to his death he gave written notice to. the insurer of the change intended, the law will give effect to the change although the insured has not complied with all of the formalities specified in the contract for effecting a change of beneficiary, provided his failure in that regard was excusable under all the circumstances. In other words, proof of clear intent, plus written notice to the insurer prior to death, appears to be enough, under Iowa law, to effect the desired change, where the failure to meet all the requirements is excusable.
Franck v. Equitable Life Ins. Co., 203 F.2d 473, 476-77 (8th Cir.1953). As the above passage demonstrates, there are significant differences between requiring a plaintiff to show substantial compliance with the terms of the policy and merely showing plaintiff was the intended beneficiary of a life insurance policy. Id. In addition to “clear intent,” a plaintiff must also provide written notice to the insurer, as well as an excuse for failing to meet the other requirements of the policy. Since Iowa’s substantial compliance doctrine is not as liberal as Kentucky’s, merely establishing that the plaintiff was the intended beneficiary of the policy would not satisfy the substantial compliance doctrine as it exists in Iowa. We therefore decline to adopt the rationale expressed in Mims.
*106 “The critical element in establishing a duty is the foreseeability of harm to a potential plaintiff.” Appleman, § 2.07[1], at 2-84. Our caselaw imposes a duty on other professionals for foreseeable harm to intended beneficiaries. See Schreiner, 410 N.W.2d at 682. Other jurisdictions impose similar duties on insurance agents and brokers for injuries to persons who are strangers to the professional relationship but who are foreseeably harmed by the professional’s negligence. Insurance agents and brokers should be similarly held to owe a duty of care to third parties in limited circumstances. We therefore hold that an insurance agent owes a duty to the intended beneficiary of a life insurance policy in limited circumstances. See United Olympic Life Ins. Co. v. Gunther, No. 92-36710, 1994 WL 96328, at *2-3 (9th Cir.1994); Jones, 443 F.Supp.2d at 7; Parlette, 596 A.2d at 670-71.
In order to limit the potential liability of insurers, avoid conflicts of interests, and not interfere with the insured-insurer relationship, we will require a plaintiff to show that he or she was the “direct, intended, and specifically identifiable beneficiar[y]” of the policy as well as the other elements of negligence. Schreiner, 410 N.W.2d at 682; see also Parlette, 596 A.2d at 670-71. Further, the plaintiff must produce evidence from the written instrument itself that indicates the plaintiff is the intended beneficiary of the policy. Schreiner, 410 N.W.2d at 682. If the plaintiff cannot show that he or she is the intended beneficiary of the policy, then the insurance agent does not owe that plaintiff a duty of care.
B. Was Summary Judgment Appropriate? Michele claims she was the intended beneficiary of the entire policy, including the first $35,000. Farm Bureau disputes this claim and states that Tom’s daughter was the intended beneficiary of the first $35,000 of the policy and that Michele was only the intended beneficiary of the balance of the proceeds. If Michele truly is the intended beneficiary of the entire policy, as she claims, then Schiffer owed her a duty of care with respect to the $35,000. If she cannot establish that fact, then Schiffer did not owe her a duty of care. See Jones, 443 F.Supp.2d at 7 n. 3. Thus, Michele’s status as the intended beneficiary was material to the outcome of the case.
Facts are disputed when reasonable minds could disagree on how these issues of fact should be resolved. Seneca Waste Solutions, 791 N.W.2d at 411. Motions for summary judgment must also be decided based on admissible evidence. Iowa R. Civ. P. 1.981(5); see also Kern, 757 N.W.2d at 656 n. 3. We now examine the admissible evidence in this case to determine whether reasonable minds could disagree on whether Michele was the intended beneficiary of the entire policy.
In her affidavit opposing Farm Bureau’s motion for summary judgment, Michele claims that in April 2005, shortly after his support obligation ended, “Tom asked Schiffer to change the beneficiary designation on his policy so that Jamie Pitts would no longer be the primary beneficiary of the first $35,000 in proceeds.” Michele believed Tom filled out the necessary paperwork to complete the change in beneficiary, but she does not know what he did with it. Michele claims that
in 2006 Tom came home from a meeting with Schiffer and told [her] that [she] would receive all of the proceeds from [Tom’s] life insurance policy when he passed away.... Tom told [Michele] that he was sure because Schiffer told him that [Michele] was now the sole beneficiary.
Michele also claims that two weeks after Schiffer met with Tom, Schiffer confirmed *107 with her in a telephone conversation that Jamie was no longer a beneficiary under the policy. She further claims that Schif-fer continued to tell her that she was the sole beneficiary on the policy after Tom’s death. In a meeting in Schiffer’s office, Schiffer explained to Michele that she would be receiving the full amount of Tom’s life insurance proceeds, which was about $108,000. It was during this meeting that Schiffer learned that Tom’s daughter Jamie was still listed as a beneficiary when he received a telephone call from Farm Bureau.
In an interrogatory, Michele asked Schiffer what procedure he normally follows when an insured makes an oral request to change a beneficiary. Schiffer responded,
If an insured orally requests a change in his or her life insurance beneficiary designation, I inform the insured that such a change may only be made in writing by the owner of the policy. If the insured desires to go forward with the change, I work with the insured to complete the paperwork necessary to make the change, and submit the written request to Farm Bureau’s home offices.
In its reply brief in support of its motion for summary judgment, Farm Bureau claimed that the statements Tom made to Michele regarding his beneficiary designation are inadmissible hearsay, or a violation of the parol evidence rule, and therefore the statements could not be considered when ruling on a motion for summary judgment. One day before the district court granted summary judgment and dismissed the case, Farm Bureau filed a motion in limine to exclude any statements made by Tom on the ground that they are inadmissible hearsay.[7] The district court granted summary judgment and dismissed the case based on a lack of a duty on Farm Bureau’s part to make a change in beneficiary. It therefore never decided the motion in limine and did not address the hearsay claims Farm Bureau raised. Likewise, the district court did not address whether Farm Bureau’s claim that any statements Tom or Schiffer may have made regarding the beneficiary designation were inadmissible under the par-ol evidence rule. In order to determine the merits of the motion for summary judgment, we must review the evidence offered by Michele to determine whether it is admissible and whether the admissible evidence creates a genuine factual dispute.
We start by examining the applicability of the parol evidence rule to Michele’s negligence claim. “The parol evidence rule forbids use of extrinsic evidence to vary, add to, or subtract from a written agreement.” I.G.L. Racquet Club v. Midstates Builders, Inc., 323 N.W.2d 214, 216 (Iowa 1982) (citation and internal quotation marks omitted). Michele does not dispute that the beneficiary designation on the policy indicates Tom’s daughter is still the primary beneficiary of the first $35,000 in proceeds. She is not seeking to use extrinsic evidence to vary the terms of the policy; she is seeking to use extrinsic evidence to show that Schiffer’s negligence is the reason the terms of the policy still include Tom’s daughter as the primary beneficiary. Under this theory of liability, the parol evidence rule does not bar the admission of Schiffer’s statements to Tom or Michele, or other evidence of Tom’s intent to remove his daughter as the primary beneficiary.
*108 Farm Bureau argues that several of the alleged oral representations Michele relies on to defeat summary judgment are out-of-court statements offered for their truth and therefore constitute inadmissible hearsay. See Iowa Rs. Evid. 5.801(c), 5.802. Farm Bureau also claims that “[t]o the extent Plaintiff argues these statements are offered to show Mr. Pitts’ intent to name Plaintiff as the sole beneficiary or his belief that he had done so, they are irrelevant and immaterial.” It notes that “the policy required Mr. Pitts to express his intent by submitting a signed written request to change his beneficiary designation, and the fact that he did not do so is dispositive in this case.”
Again, Michele is not claiming that Tom successfully changed the beneficiary on his life insurance policy by complying, or substantially complying, with its terms. She is claiming that Tom intended her to be the primary beneficiary of the entire policy, and Schiffer’s negligence prevented that from occurring. Tom’s intent and belief about who was named as the primary beneficiary on his policy are both relevant and material considerations. With this use of the statements in mind, we now consider Farm Bureau’s claim that some of the evidence contained in Michele’s affidavit constitute inadmissible hearsay.
The first statements Farm Bureau claims are inadmissible hearsay are Tom’s alleged statement to Schiffer at a meeting in 1993 “that the child support obligation was only to be secured by life insurance until [Tom’s daughter] turned 18” and that Tom asked Schiffer to remove his daughter as the primary beneficiary of the entire policy once his support obligation terminated because he wanted Michele to be the sole beneficiary of the proceeds. Statements of the declarant’s intent are an exception to the hearsay rule. Iowa R. Evid. 5.803(3). Under rule 5.803(3), statements of a declarant’s intent to act are admissible “to prove declarant engaged in the intended action.” 7 Laurie Kratky Dore, Iowa Practice Series, Evidence § 5.803:3, at 836-37 (2011) (citing state and federal cases applying the doctrine established in Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892)). Since Tom’s statement demonstrates his own intent to remove his daughter as a primary beneficiary once his support obligation ended, it is admissible to prove he took steps to remove his daughter as the primary beneficiary of the first $35,000 of the proceeds of his life insurance policy. Michele’s affidavit also states that Tom said she “would receive all of the proceeds from his life insurance policy when he passed away.” This statement would also be admissible to show Tom’s intent to give Michele all of the proceeds of his life insurance policy. Iowa R. Evid. 5.803(3).
Schiffer’s statement to Tom would be admissions of a party opponent and would be excluded from the hearsay rule under rule 5.801(d)(2). However, Tom relayed those statements to Michele, interposing another layer of hearsay. In order to be admissible, the statements Tom made to Michele must fall within another exemption or exception to the hearsay rule. Id. r. 5.805. The only possible exception that applies is the exception found in rule 5.803(3), which makes admissible
[a] statement of the declarant’s then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declar-ant’s will.
*109 Id. r. 5.803(3) (emphasis added). Michele seeks to admit Tom’s statement of his belief or memory of what Schiffer said to prove that Schiffer actually said it. This type of statement is expressly excluded from the exemption, “unless it relates to the execution, revocation, identification, or terms of declarant’s will.” Id.
Michele acknowledges that Tom’s statement does not relate to the terms of a will. However, she argues that it does relate to the designation of a beneficiary of a life insurance policy and that the scope of rule 5.803(3) should be extended to include statements like Tom’s. See Primerica Life Ins. Co. v. Watson, 362 Ark. 54, 207 S.W.3d 443, 447-48 (2004) (applying the exception to statements relating to the de-clarant’s statements regarding his beliefs about the beneficiary of a life insurance policy). In Primerica, the court noted 'that out of court statements of a declar-ant’s belief are not admissible under the exception found in rule 803(3). Id. at 447-48. However, under Arkansas law, “provisions in life insurance contracts with reference to beneficiaries or changes in beneficiaries are in the nature of a last will and testament and, therefore, ‘are construed in accordance with the rules applicable to the construction of wills.’ ” Id. at 448 (quoting Am. Found. Life Ins. Co. v. Wampler, 254 Ark. 983, 497 S.W.2d 656, 658 (1973)). The court thus found the declarant’s statements of belief about the terms of his life insurance policy admissible under the exception to the hearsay rule. Id.
This interpretation runs counter to the express language of rule 5.803(3), which, by its terms, only admits “a statement of memory or belief to prove the fact remembered or believed [if] it relates to the execution, revocation, identification or terms of declarant’s will.” When the language of the rule is clear, we need not search for meaning beyond the words used. We therefore decline to adopt Arkansas’s expanded interpretation of its version of rule 5.803(3). Therefore, any statements that Schiffer may have made to Tom that Tom then relayed to Michele are inadmissible hearsay.
Even without Tom’s statement to Michele that, according to Schiffer, she was now the primary beneficiary of the entire policy, there is still enough evidence to create a factual dispute over who Tom’s intended (not actual) beneficiary was and whether he expressed that intent to Schif-fer. There are also statements from Schif-fer to Michele herself where he stated that Michele was now the sole beneficiary. The alleged admissions by Schiffer would also be admissible.
As noted above, Michele must also point to evidence in the written instrument itself that identifies her as the intended beneficiary of the entire policy. According to the last written beneficiary designation, Michele was the primary beneficiary of all but $35,000 in proceeds, which were payable to Tom’s daughter as required by a court order. In other words, Tom’s intent, expressed in the policy itself, was that Michele would receive all policy proceeds except for those that were required by court order to be payable to Tom’s daughter. In 2005, when Tom’s child support obligation ended, Tom was no longer required to maintain any life insurance naming his daughter as the beneficiary. Thus the policy provides evidence that Tom intended for all proceeds that were not required to satisfy his child support obligation to be paid to Michele.
Having established that Michele has produced evidence from the written instrument itself that she was the intended beneficiary, we now turn to the question of whether summary judgment was appropriate.
A party is entitled to summary judgment when the record shows no genuine issue of material fact and that the mov *110 ing party is entitled to a judgment as a matter of law.... “In deciding whether there is a genuine issue of material fact, the court ... afford[s] the nonmoving party every legitimate inference the record will bear.”
Kern, 757 N.W.2d at 657 (citations omitted) (alteration in original). In this case, Michele has produced admissible evidence that Tom intended to change his beneficiary designation. In response to an interrogatory, Schiffer stated that if an insured made an oral request to change a beneficiary designation, he would inform the insured that such a request must be made in writing and he would then “work with the insured to complete the paperwork necessary to make the change, and submit the written request to Farm Bureau’s home offices.” Michele claims that she believed Tom filled out the paperwork to complete the change, but she does not know what he did with it. Further, she has produced admissible evidence that after Tom met with Schiffer, Schiffer told her that she was the primary beneficiary of the entire policy.
Assuming all of Michele’s factual allegations are true, it is reasonable to infer that Tom told Schiffer he wanted to change the beneficiary of his policy. It is also reasonable to infer that Schiffer responded as he indicated in his interrogatory and that he provided Tom with the paperwork necessary to change a beneficiary, the paperwork that Michele believed Tom filled out. Based on Sehiffer’s alleged statement to Michele, it is reasonable to infer that Schiffer believed that Tom had provided him with the paperwork necessary to make the change. If Tom provided Schiffer with the paperwork necessary to change his beneficiary designation, but the beneficiary designation was not changed, it is reasonable to infer that some negligence on Schiffer’s part led to Tom’s beneficiary designation remaining unchanged.
Michele and Schiffer dispute whether Tom intended to change the beneficiary of his policy and whether he requested to change the beneficiary of his policy. They dispute what representations Schiffer made to Michele regarding the status of the beneficiary designation. Depending on how these factual disputes are resolved it might be reasonable to infer that Schiffer’s negligence was the reason that Michele was not the primary beneficiary of the entire policy. Accordingly, there were disputed issues of material fact and summary judgment on this claim was inappropriate.
V. Michele’s Negligent Misrepresentation Claim.
Michele asserted a claim of negligent misrepresentation against Farm Bureau and Schiffer. Farm Bureau moved for summary judgment on this count, alleging “[t]he undisputed material facts establish that Plaintiffs negligent misrepresentation claim should also be dismissed because Plaintiff cannot prove, as a matter of law, that she was harmed in a transaction with a third party.” In its December 9, 2010 decision, the district court did not specifically address the negligent misrepresentation issue. Instead, after determining Schiffer’s failure to act was based on a lack of authority, the court stated “the matter is hereby dismissed.” One week later, Michele filed a motion to enlarge, claiming there were disputed facts that precluded summary judgment on Michele’s negligent misrepresentation claim. The motion was denied.
We will begin our discussion with a brief review of the tort of negligent misrepresentation. When a negligent misrepresentation results in personal injury or property damage, the claim is treated like any other negligence claim. Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc., 783 N.W.2d 684, 690 *111 (Iowa 2010). “However, when the negligent misrepresentation only interferes with intangible economic interests, courts have developed more restrictive rules of recovery.” Id. Iowa first recognized the tort in Ryan v. Kanne, 170 N.W.2d 895 (Iowa 1969), and adopted the definition found in Restatement (Second) of Torts section 552. Ryan, 170 N.W.2d at 403. According to the Restatement, negligent misrepresentation is defined as follows:
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the1 information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.
Restatement (Second) of Torts § 552, at 126-27 (1977).[8] This definition does not rely on “the traditional foreseeability limitation applicable to negligence claims” but instead limits “the group of persons to whom [a] defendant may be liable, short of the foreseeability of possible harm.” Sain v. Cedar Rapids Cmty. Sek Dist., 626 N.W.2d 115, 123 (Iowa 2001) (citations and internal quotation marks omitted); see also Van Sickle, 783 N.W.2d at 690.
Our past cases have held that only those who are “in the business of supplying information to others” can be liable for negligent misrepresentation. Meier v. Alfa-Laval, Inc., 454 N.W.2d 576, 582 (Iowa 1990). We have explained the need for a more restricted view of liability:
This narrowing of the universe of potential defendants liable for negligent misrepresentations promotes fairness by ensuring that those liable are only those who supply information in an advisory capacity and are “manifestly aware” of how the information will be used and “intend[ ] to supply it for that purpose.” The restriction also ensures that those liable are “in a position to weigh the use for the information against the magnitude and probability of the loss that might attend the use of the information if it is incorrect.”
Van Sickle, 783 N.W.2d at 691 (citations omitted) (alteration in original).
When determining ' whether a person is in the business of supplying information to others, we consider several factors. We distinguish between relationships that are arm’s-length and adversarial and those that are advisory. Sain, 626 N.W.2d at 124-25. We also' consider *112 whether the person providing the information “is manifestly aware of the use that the information will be put, and intends to supply it for that purpose.” Id. at 125. We consider whether the defendant gave the information to the plaintiff “gratuitously or incidental to a different service.” Id. We have also found it appropriate to consider the role the defendant was playing when the alleged misrepresentation occurred. See Meier, 454 N.W.2d at 581 (determining whether a cause of action would lie where the defendant suppliéd information in his “role as a retail merchant”).
We have found accountants, appraisers, school guidance counselors and investment brokers all fall within this class of potential defendants. Sain, 626 N.W.2d at 126; Larsen v. United Fed. Savings & Loan Ass’n, 300 N.W.2d 281, 287-88 (Iowa 1981); Ryan, 170 N.W.2d at 408; McCracken v. Edward D. Jones & Co., 445 N.W.2d 375, 376, 382 (Iowa Ct.App.1989). However, we have refused to allow a suit for negligent misrepresentation where the defendant was a retailer in the business of selling and servicing merchandise, a seller who made misrepresentations pursuant to the sale of a business, a bank officer negotiating a loan guarantee with a bank customer, or an employer negotiating with an employee for employment. Fry v. Mount, 554 N.W.2d 263, 266 (Iowa 1996); Freeman v. Ernst & Young, 516 N.W.2d 835, 838 (Iowa 1994); Haupt v. Miller, 514 N.W.2d 905, 906, 910 (Iowa 1994); Meier, 454 N.W.2d at 581.
A life insurance agent falls somewhere between these two groups. On the. one hand, an insurance agent, like a retailer, sells a .product to a customer. This is clearly an arm’s-length transaction — the type of relationship that cannot give rise to an action for negligent misrepresentation. Any information given to the prospective customer at this time would be incidental to the negotiations. At the time Schiffer sold the policy to Tom, their relationship was that of seller and buyer, a relationship that is. clearly arm’s-length and adversarial, as opposed to advisory, in nature. Farm Bureau states, “The only transaction at issue in this case is the purchase of the Policy from Schiffer.” If that were the case, then Schiffer would not be a proper defendant in a negligent misrepresentation action.
However, Michele does not claim that Schiffer made negligent misrepresentations when Tom purchased the policy in 1993. She claims that at some point in 2006, Schiffer told her that Tom’s daughter was no longer the primary beneficiary on the policy. At that point, Tom was already an insured. “[T]he relationship between an insured and an insurance agent is one of principal/agent.” Langwith, 793 N.W.2d at 219 (citing Collegiate Mfg., 200 N.W.2d at 858); Wolfswinkel v. Gesink, 180 N.W.2d 452, 456 (Iowa 1970) (“The agent or broker is liable on the theory that he is the agent of the insured in negotiating for a policy and that he owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting the insurance.”). We will keep Schiffer’s role as Tom’s agent in mind when considering whether he was “ ‘in the business of supplying information to others’” at the time the alleged misrepresentations were made. Van Sickle, 783 N.W.2d at 691 (quoting Meier, 454 N.W.2d at 582).
Other jurisdictions have recognized that negligent misrepresentation actions can be brought against insurance intermediaries. 1 Appleman, § 2.05[2][d][i], at 2-33 (listing cases permitting the cause of action). Like Iowa, these jurisdictions apply the definition of negligent misrepresentation that is found in section 552 of the Restatement (Second) of Torts. See, e.g., Merrill v. William E. Ward Ins., 87 Ohio App.3d *113 583, 622 N.E.2d 743, 748-49 (1993); Nast v. State Farm Fire & Cas. Co., 82 S.W.3d 114, 124 (Tex.App.2002) (“We perceive no reason why section 552 should not apply to insurance agents.”). Privity of contract between the insurance agent and the party to whom the misrepresentation was made is not required to maintain an action against an insurance agent. Aesoph v. Kusser, 498 N.W.2d 654, 656-57 (S.D.1993). Instead, such a duty arises out of “the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information to give it with care.” Id. (citation and internal quotation marks omitted); see also Merrill, 622 N.E.2d at 748-49.
These holdings are consistent with our rule limiting liability to those in the business of supplying information. When Schiffer allegedly advised Tom and Michele that Tom’s daughter was no longer the primary beneficiary on the policy, he was functioning as Tom’s agent. The advisory nature of the principal-agent relationship supports allowing a claim of negligent misrepresentation. See Sain, 626 N.W.2d at 124-25. Michele claims Schiffer knew that Tom intended to remove his daughter as the primary beneficiary in favor of Michele. The logical consequence of telling Michele and Tom that Tom’s daughter had been removed as the primary beneficiary would be that Tom would not make further efforts to remove his daughter as the primary beneficiary. Thus, Schiffer would have to be “aware of the use that the information will be put.” Id. at 125. The consequence of providing incorrect information regarding the identity of the beneficiary of the policy is obvious and would clearly be foreseeable to Schiffer. See Van Sickle, 783 N.W.2d at 691 (restricting possible defendants to those “in a position to weigh the use for the information against the magnitude and probability of the loss that might attend the use of the information if it is incorrect” (citation and internal quotation marks omitted)).
We conclude Schiffer is among the class of defendants against whom an action for negligent misrepresentation may be brought. When Schiffer allegedly made the misrepresentations at issue in this case, he was acting as an insurance agent providing information regarding the identity of a beneficiary of a life insurance policy to both the insured and the intended beneficiary of the policy. The information was therefore provided “ ‘in the course of his business,. profession or employment.’ ” Id. at 690 (quoting Restatement (Second) of Torts, § 552, at 126). The information Schiffer provided was not given for his own benefit but was instead provided for the benefit of Michele and her husband. See Sain, 626 N.W.2d at 126 (noting that a “school counselor does not act for his or her own benefit, but provides information for the benefit of students”). Schiffer did not directly receive payment for the advice; however, the defendant’s pecuniary interest in providing the information may be indirect. Id. How the information would be used and the possible harm that might result if the information he provided was incorrect were both foreseeable. Correctly informing the policyholder or the intended beneficiary as to the identity of the beneficiary on a life insurance policy is critical- information that is essential to Schiffer’s role as an insurance agent and “is not incidental to some more central function or service” he provided to Tom. Id.
Even though Michele was not the policyholder, she is a proper plaintiff in an action against Schiffer. Liability for negligent misrepresentation is “limited to loss suffered ... by the person ... for whose benefit and guidance [the defendant] intended] to supply the information or *114 knows that the recipient intends to supply it.” Van Sickle, 783 N.W.2d at 690 (quoting Restatement (Second) of Torts § 552, at 126-27). The alleged misrepresentations that Schiffer made to Michele were also made in the course of Schiffer’s business, and Michele’s reliance on these statements were equally foreseeable. Once Michele was told that Tom’s daughter was no longer the primary beneficiary on the policy, she had no reason to ask her husband to take further action to change the policy or to obtain additional insurance on her husband’s life from another source if Tom refused to take the necessary steps to effectively change the beneficiary designation. Michele was named as the beneficiary of any amount of proceeds beyond that which was necessary to secure Tom’s child support obligation. When asked for information regarding other potential beneficiaries, Schiffer was under a duty “to exercise reasonable care to provide accurate representations about existing information which was ascertainable by him.” Merrill, 622 N.E.2d at 749.
Schiffer and Michele dispute what representations Schiffer made to her. Michele’s affidavit alleges that she asked Schiffer whether Tom’s daughter was still the primary beneficiary under Tom’s policy and Schiffer told her that Tom’s daughter “was no longer a beneficiary under the policy.” In response to an interrogatory, Schiffer stated that while Michele may have answered the telephone from time to time when he called Tom, he could not recall any specific conversations he may have had with Michele subsequent to Tom purchasing the life insurance. There is, therefore, a genuine issue of material fact as to whether Schiffer told Michele that Tom’s daughter was no longer the primary beneficiary on the policy. This disputed fact is clearly material to the outcome of this case. Summary judgment is therefore inappropriate at this time. See Seneca, Waste Solutions, 791 N.W.2d at 411. Since the district court’s decision to grant summary judgment cannot be sustained on an alternate ground, the district court’s decision is reversed, and the case is remanded.
VI. Respondeat Superior.
Pitts’s respondeat superior claim against Farm Bureau was dismissed along with the negligence and negligent misrepresentation claims. As long as Schiffer’s liability remains unclear, it is impossible to resolve this issue on summary judgment. Accordingly, the district court’s order dismissing this claim is reversed as well.
VII. Disposition.
The district court erred when it granted Farm Bureau’s motion for summary judgment and dismissed the case. There is a genuine issue of material fact in dispute as to whether Michele was the intended beneficiary of all the proceeds of Tom’s policy and whether Schiffer’s negligence led to Tom’s intent not being carried out. There is also a factual dispute over whether Schiffer made negligent misrepresentations to Michele. These disputes over material facts make summary judgment inappropriate at this time. Having found no alternative ground on which to affirm the district court’s grant of summary judgment, we reverse the decision of the district court, vacate the decision of the court of appeals, and remand the case for further proceedings.
DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.
All justices concur except MANSFIELD, J., CADY, C.J., and WATERMAN, J., who dissent.

. It is unclear if this beneficiary designation was effective as it does not show that it was recorded at the home office of Farm Bureau.

. From this point on, unless Schiffer’s individual actions are being discussed, "Farm Bureau” refers collectively to Schiffer and Farm Bureau.

.The original complaint also alleged a breach of fiduciary duty, which was dismissed in the district court’s order granting Farm Bureau's motion for summary judgment. Pitts has not appealed this ruling, and therefore we will not consider the alleged breach of fiduciary duty.

. Farm Bureau has not argued on appeal that the economic loss rule creates a bar to recovery in this case. The economic loss rule is based on “[t]he well-established general rule ... that a plaintiff who has suffered only economic loss due to another’s negligence has not been injured in a manner which is legally cognizable or compensable.” Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines Corp., 345 N.W.2d 124, 126 (Iowa 1984). "As a general proposition, the economic loss rule bars recovery in negligence when the plaintiff has suffered only economic loss.” Annett Holdings, Inc. v. Kum & Go, L.C., 801 N.W.2d 499, 503 (Iowa 2011). The rule is partly intended to prevent the "tortification of contract law.” Id. Another “rationale for this limitation on recovery is that '[pjurely economic losses usually result from the breach of a contract and should ordinarily be compensable in contract actions, not tort actions.’ " Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc., 783 N.W.2d 684, 693 (Iowa 2010) (citation omitted) (alteration in original).
We have recently decided a case involving the application of the economic loss rule. Instead of ”delineat[ing] the precise contours of the economic loss rule in Iowa” we examined whether the case has "characteristics that bring it within the scope of the economic loss rule.” Annett Holdings, 801 N.W.2d at 504. The features of this case may place it outside the scope of the economic loss rule. First, there is no chain of contracts between Michele and Schiffer. In Annett, the plaintiff had contracted with a third party, who had contracted with the defendant. Id. at 501. Here, Tom had a contract with Schiffer and Farm Bureau, but Michele did not contract with either Tom, Schiffer, or Farm Bureau. Second, Michele’s claim is not as remote as the claim rejected in Nebraska Innkeepers. See id. at 504. Schiffer's alleged negligence was the direct cause of the loss suffered by Michele. These are difficult questions to answer, and they are made more difficult by the fact that neither party has briefed this issue.
There is another potential problem regarding the application of the economic loss rule in this case. We have recognized at least three qualifications to the economic loss rule: cases where the duty of care arises out of a principal-agent relationship, claims of negligent misrepresentation, and professional negligence claims against attorneys and accountants. Id. We have not held that these are the only qualifications to the rule, however. See id.; see also Van Sickle, 783 N.W.2d at 692 n. 5. It is possible that the professional negligence qualification may extend to insurance agents, as well as attorneys or accountants.
Whatever the merits, Farm Bureau has not raised the economic loss rule on appeal or before the district court. Our rule is that issues not argued on appeal are deemed waived. See State v. Seering, 701 N.W.2d 655, 661 (Iowa 2005). We decline to decide this case on an issue not briefed or argued to this court. Accordingly, we offer no opinion as to whether Michele’s negligence claim would be barred by the economic loss rule.

. In Duffie v. Bankers’ Life Ass’n of Des Moines, 160 Iowa 19, 139 N.W. 1087 (1913), a deceased's widow brought a negligence action against a life insurance company in both an individual capacity and in her capacity as the executor of his estate. Duffie, 160 Iowa at 21, 139 N.W. at 1087. She alleged the company’s negligent processing of her husband's application led to him dying prior to a policy being issued even though the deceased "had done all that was required of him to obtain insurance” including paying all necessary fees and submitting to a physical examination. Id. at 22-24, 139 N.W. at 1087-88. According to the widow, the insurance company “owed the applicant the affirmative duty either of rejecting the application or of accepting it within a reasonable time, and upon breach of such duty it [was] liable for all damages suffered in consequences of such breach.” Id. at 24, 139 N.W. at 1088-89. We held that the widow could bring a negligence action on behalf of the estate, but not in her individual capacity because any duty the company had to timely process an application would have been owed to the deceased, not the widow. Id. at 29, 139 N.W. at 1090.
Duffie is not applicable to the case at bar. First, the insurer’s negligence in Duffie prevented the deceased from obtaining the policy he had applied for and paid for. Unlike in Duffie, Schiffer’s alleged negligence did not prevent Tom from obtaining an insurance policy. Thus, Tom’s estate has not suffered any damage as a result of Schiffer's alleged negligence. The absence of damages would preclude the estate from bringing a successful negligence action. Second, Duffie was decided decades before Schreiner, and if Duffie were decided today, the result might be different in light of that case. The widow in Duffie was named in the application. 160 Iowa at 21, 139 N.W. at 1087. She would clearly qualify as a direct, intended, specifically identifiable beneficiary as expressed in the written instrument. See Schreiner, 410 N.W.2d at 682.
We also note that in the North Western reporter, the plaintiff’s name is spelled "Duffy.” See Duffy, 139 N.W. at 1087. However, in the official Iowa reporter, the plaintiff’s name is spelled "Duffie.” See Duffie, 160 Iowa at 19, 139 N.W. 1087.

. We take this opportunity to reiterate that "[b]ecause the duty analysis in this case is based on agency principles and involves economic loss, the duty analysis adopted by this court in Thompson v. Kaczinski, 774 N.W.2d 829 (Iowa 2009), based on Restatement (Third) of Torts: Liability for Physical and Emotional Harm, is not dispositive.” Langwith, 793 N.W.2d at 221 n. 3.

. Farm Bureau has not argued that Schiffer’s statements to Michele would constitute inadmissible hearsay. Therefore, we will consider the statements Michele alleges Schiffer made to her when reviewing the motion for summary judgment.

. While this case concerns the existence of a duty, the concepts relating to duty that are discussed in the Restatement (Third) of Torts apply to those situations where tortious conduct causes physical and emotional harm, not economic loss. We will therefore continue to use the principles we have developed based on section 552 of the Restatement (Second) of Torts.