Anna M. MIMS, Appellant,

v.

WESTERN–SOUTHERN AGENCY, INC., d/b/a Western–Southern Life Insurance Company, Appellee.

No. 2006–CA–000657–MR.

Court of Appeals of Kentucky.

April 6, 2007.

David S. Sprawls, Melissa L. Rodden, Louisville, KY, for Appellant.

Stephen H. Miller Louisville, KY, for Appellee.

Before TAYLOR and WINE, Judges; PAISLEY,[1] Senior Judge.

1. Senior Judge Lewis G. Paisley sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

## *OPINION*

PAISLEY, Senior Judge.

Anna M. Mims appeals from an order of the Jefferson Circuit Court which granted the motion to dismiss of the appellee, Western–Southern Agency, Inc., d/b/a Western–Southern Life. Mims had filed suit against Western–Southern claiming that the company and its agent had negligently failed to effectuate her late father's intent to make her the sole contingent beneficiary of his life insurance policy. Because Mims has stated a cognizable claim for recovery of proceeds under the doctrine of substantial compliance, we do not find it necessary to consider whether Kentucky law permits a third party beneficiary to pursue a negligence claim against an insurer. We therefore vacate and remand.

In 1984, Mims' parents, James and Mary Hayes, took out individual $40,000.00 life insurance policies issued by Western–Southern. They each named the other as the primary beneficiary, and their eight children as contingent beneficiaries who would share the proceeds equally amongst themselves if the primary beneficiary was deceased. Several years later, on December 27, 2002, James and Mary met with an agent of Western–Southern in order to change the contingent beneficiary of James's policy to their daughter Anna Mims, in recognition of the fact that she was assisting James with his daily living. Under the section entitled "Naming and Changing Beneficiaries," James's policy set forth the following procedure:

> You may name a beneficiary and change any named beneficiary while the insured is living. You do this by written request satisfactory to us. When the request is received and approved by us at our Home Office, it will take effect as of the date you signed it. It will not apply to

> any payment we make or other action we take before the request is approved.

A beneficiary designation change form was correctly filled out with James's name, address and policy number. The form was signed by Mary, however, rather than by James. The Western–Southern agent forwarded the form to the firm's head office, where it was stamped immediately above the signature with the receipt date of December 30, 2002. Western–Southern failed to detect that the beneficiary designation change form had not been properly executed by James. Mary died less than a year later, on November 5, 2003. James died on April 18, 2004. Initially, Western–Southern treated the 2002 beneficiary designation change form as valid. The company contacted Mims to inform her that as the sole beneficiary of the policy, she would receive the entire death benefit of $40,000.00 (less $6,360.00 for funeral expenses). She was sent a statement showing that an account had been opened in her name by Western–Southern which contained $33,640.00 plus $11.98 in earned interest.

Shortly thereafter, however, some other family members alerted Western–Southern that Mary, not James, had signed the contingent beneficiary change form. Western–Southern immediately removed the funds from Mims's account. The company informed her that it would not honor the December 27, 2002, beneficiary designation change form. Mims ultimately received only one-eighth of the net proceeds of the policy ($4,206.50) under the terms of the original beneficiary designation.

On May 12, 2005, Mims filed suit against Western–Southern, alleging that the negligence of the company in failing to ensure that James executed the form properly had led to her loss of the entire proceeds (less the funeral expenses) of the policy.

Western–Southern filed a motion to dismiss for failure to state a claim upon which relief could be granted. In support of its motion, Western–Southern argued that the only duty it owed to Mims was to pay her in accordance with the terms of her father's life insurance policy. Western–Southern acknowledged that, under Kentucky law, strict compliance with the policy provisions is not necessary in order to effect a change of beneficiary. Substantial compliance has been deemed sufficient:

This jurisdiction [Kentucky] in a long series of cases has adhered to the view that a substantial compliance with the formalities or terms of the provisions in the policy as to change of beneficiary is sufficient.... [T]he substantial compliance deemed sufficient has been when the insured had done all he could do under the circumstances; all he believed necessary to effect the change or what the ordinary layman would believe was all that was necessary to accomplish the change.

*Hill v. Union Central Life Ins. Co.*, 513 S.W.2d 808, 808–809 (Ky.1974) (citations and quotation marks omitted). Western–Southern argued that there was absolutely no evidence that James had intended to change beneficiaries, or that he had attempted to apprise the insurer of his intent. Since the change of beneficiary form was invalid because it was not properly executed, Western–Southern argued that it was fully discharged from all claims under the contract, and from the requirements of Kentucky Revised Statutes (KRS) 304.14–260, when it paid the policy proceeds to the eight original contingent beneficiaries.

In granting the motion to dismiss, the circuit court agreed with Western–Southern that "[t]here exists no evidence that James O. Hayes intended to change beneficiaries." The court stated that "Mary

Hayes had no authority to sign on her husband's behalf, did not own the policy and had no recognized legal authority to sign in his stead. Plaintiff cannot sustain her claim in the absence of the above." The court concluded that "[n]o evidence cannot rise to the minimal level of substantial compliance with respect to a change in beneficiary under the terms of this policy."

 It is well settled in this jurisdiction when considering a motion to dismiss under this rule [Kentucky Rules of Civil Procedure (CR)12.02] that the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true. *Gall v. Scroggy*, 725 S.W.2d 867, 869 (Ky. App.1987) *citing Ewell v. Central City*, 340 S.W.2d 479 (Ky.1960).

The court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim. In making this decision, the circuit court is not required to make any factual determination; rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?

*James v. Wilson*, 95 S.W.3d 875, 883–84 (Ky.App.2002) (citations omitted).

 Mims argues that the motion to dismiss was improperly granted because her allegations, if accepted as true, support a negligence action against Western–Southern. Although a cause of action by a purported beneficiary of a life insurance policy against the insurer for negligent breach of duty has never been recognized in Kentucky, Mims urges us to adopt the approach taken in *Parlette v. Parlette*, 88 Md.App. 628, 596 A.2d 665, 670–71 (1991), in which it was held that "an intended beneficiary can recover from another's in-

surance agent if the intended beneficiary can prove that intent to benefit him, or her, was a direct purpose of the transaction between insured and agent *and* [can show] the other elements of negligence." (Emphasis in original.) Such a cause of action necessitates the finding of an independent duty owed by the insurer to the intended beneficiary of the insurance policy:

> The failure to perform a contractual obligation typically does not give rise to a cause of action in tort.... However, if a plaintiff can establish the existence of an independent legal duty, he may maintain an action in tort even though the acts complained of also constitute a breach of contract.

*Jones v. Hartford Life and Accident Ins. Co.,* 443 F.Supp.2d 3, 5 (D.D.C.2006) (citation omitted).

Western–Southern maintains that Mims's suit is a meritless breach of contract claim disguised as a negligence claim. The company argues that it owed no independent duty to third party beneficiaries, and that it had fully discharged its contractual obligations to James by honoring his original beneficiary designation because the second one was invalid. It further argues that Mims's negligence suit is barred by the economic loss doctrine which prevents a claimant from pursuing a tort action in order to obtain purely economic damages.

In our view, it is unnecessary to determine whether Western–Southern owed an independent duty to Mims such as to trigger potential tort liability. Under a negligence theory, as outlined in *Parlette,* Mims would bear the burden of proving that her father intended to change his contingent beneficiaries, but that his intent was thwarted by the negligence of the Western–Southern agent who allowed Mary to sign the form, and by the further negli-

gence of the home office in accepting the form. But if Mims is able to meet this burden of proof, she would in effect also be proving that James substantially complied with the provisions of his insurance policy, thereby providing her with a recognized cause of action to recover proceeds under Kentucky's "very liberal" interpretation of the substantial compliance doctrine. *See Pikeville National Bank & Trust Co. v. Shirley,* 281 Ky. 158, 135 S.W.2d 431, 433 (1939). The threshold inquiry under either a negligence or contract theory is essentially identical: "The question herein is not [a] dispute between the contracting parties [i.e., James Hayes and Western–Southern] as to the terms of the contract, but one as to whom the insured intended to make a gift by way of insuring his life for same." *Bosse v. Bosse,* 248 Ky. 11, 57 S.W.2d 995, 996 (1933).

Indeed, Western–Southern based its motion to dismiss in part on Mims's alleged failure to present sufficient proof of substantial compliance, and the circuit court dismissed the action precisely on those grounds—that there was "no evidence" of James's intent to alter the beneficiaries of his policy. But the allegations in the complaint, if accepted as true—as they must be under the standard governing motions to dismiss—would be sufficient to support a claim of substantial compliance under our case law.

█ Western–Southern has argued that any evidence of James's intent would be barred by the rule against hearsay; this argument is premature because "[t]he court should not grant the motion [to dismiss] unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Pari–Mutuel Clerks' Union of Kentucky v. Kentucky Jockey Club,* 551 S.W.2d 801, 803 (Ky.1977). Moreover, our case law is clear that hear-

say evidence as to the decedent's intent is admissible under these factual circumstances. In *Vaughn v. Baker*, 438 S.W.2d 517 (Ky.1969), for example, a policyholder who informed his insurance agent's wife that he wished to change beneficiaries was killed in an accident before he could complete any application or form to that effect; his conversation with the wife was nonetheless deemed admissible and sufficient evidence of his intent. "We think the issue is whether the insured has made a genuine, bona fide attempt of a substantial nature to have the beneficiary changed, and whether he makes his informal request in writing or orally has no real significance in resolving the issue." *Vaughn*, 438 S.W.2d at 519.

The order dismissing Mims's suit is therefore vacated, and this case is remanded to the Jefferson Circuit Court for further proceedings in accordance with this opinion.

ALL CONCUR.