RENDERED:  JANUARY 28, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0166-MR

HENRY J. KAPLAN, M.D.                             APPELLANT

|  |  |
|---|---|
| v. | APPEAL FROM JEFFERSON CIRCUIT COURT<br>HONORABLE ANGELA MCCORMICK BISIG, JUDGE<br>ACTION NO. 20-CI-004885 |

UNIVERSITY OF LOUISVILLE;
TONI M. GANZEL;
RONALD I. PAUL;
AND GREGORY C. POSTEL                             APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, DIXON, AND MAZE, JUDGES.

MAZE, JUDGE:  Appellant, Henry J. Kaplan, M.D., appeals the Jefferson Circuit

Court's order dismissing his complaint for tortious interference with business

relationship and expectancies against Appellees, University of Louisville (the

"University"), Toni M. Ganzel, M.D., Ronald I. Paul, M.D., and Gregory C. Postel, M.D. For the following reasons, we affirm.

## BACKGROUND

Dr. Kaplan came to the University in 2000 to serve as chair of the Department of Ophthalmology and Visual Sciences ("Department"). Dr. Kaplan was also a professor, research scientist, and clinician, as well as the chief executive officer and president of the University of Louisville Physician-Eye Specialists (the "Practice"), which is the Department's clinical practice.

In 2018, the University announced "cost controls" for all departments due to budget shortfalls, including a salary cut for faculty clinicians in 2019. To avoid salary reductions, Dr. Kaplan began exploring potential revenue sources for the Department, including selling the Practice to a private equity group. Dr. Kaplan communicated with four investment groups, but did not enter into any agreements with these groups.

Around this same time, the Department had multiple medical offices under the Practice's name. The Department's busiest office was in the Springs Medical Center ("SMC") on Dutchmans Parkway in Louisville, Kentucky. Dr. Kaplan worked to secure a lease for more space at SMC. However, in May 2018, SMC's landlord said that the space was going to another tenant because the Department had yet to agree to a new lease. Thus, on May 21, 2018, Dr. Kaplan

entered into a new lease with SMC on behalf of the Department.  Shortly thereafter, on May 31, 2018, Dr. Kaplan met with Dr. Postel, the University's interim executive vice president, and told him about the lease with SMC.

Several months later, on October 16, 2018, Dr. Postel and Dr. Ganzel, the dean of the University's School of Medicine, met with Dr. Kaplan and told him that a special chair review committee would be formed to investigate complaints regarding Dr. Kaplan's aforementioned financing and leasing efforts.  Dr. Ganzel summarized the meeting in a letter to Dr. Kaplan on October 25, 2018:

> As we discussed in the meeting, several concerns have been brought to our attention in recent weeks regarding your actions and alleged actions as Chair. . . . Specifically, we discussed your unauthorized execution of a lease on behalf of [the Practice], failure to honor your initial obligation of the Department to occupy space and use equipment in the PMOB resulting in expense to re-stock equipment, alleged attempt to seek a loan to fund operations outside of [the Practice's] regular financing that could compromise [the Practice's] debt covenant agreement and the creation of an LLC, that if intended to spin-off the clinical practice of the Department into an outside entity, would violate the Practice Plan.

In the meeting, Dr. Kaplan was told he would be administratively suspended from his chair position.

The following month, Dr. Ganzel and Dr. Paul, the vice dean of faculty affairs for the University, informed Dr. Kaplan that the special chair review had been terminated and the issues were instead being investigated by the

-3-

University's Audit Services.  They also informed Dr. Kaplan that he was immediately suspended and prohibited from engaging in any University-related activity in any capacity, which meant he could not contact University personnel or enter University property.  Dr. Kaplan alleges that his fellow faculty and research collaborators were warned not to communicate with him under threat of dismissal.  The University also took Dr. Kaplan's desktop computer from his office and ordered him to return his University laptop, which Dr. Kaplan alleges effectively ended his medical practice and scientific career.

When the investigation ended, Dr. Kaplan was informed that Dr. Ganzel was beginning the process to terminate him from the University.  And, on April 23, 2020, the University officially terminated him.

Initially, Dr. Kaplan filed suit in federal court alleging Defendants terminated him without due process and violated his Fourteenth Amendment liberty interests in his reputation and career along with his First Amendment right to academic freedom.  The federal court dismissed Dr. Kaplan's claims and declined to exercise supplemental jurisdiction over Dr. Kaplan's state-law claims. *Kaplan v. Univ. of Louisville*, 10 F.4th 569 (6th Cir. 2021).

Dr. Kaplan then filed the underlying action for tortious interference with business relationships and expectancies in Jefferson Circuit Court. Pursuant to CR[1] 12.02, Defendants moved to dismiss Dr. Kaplan's claim.

In their motion to dismiss, Defendants argued that the University enjoyed governmental immunity because the Department's work was in furtherance of the University's legislative mandate to become a nationally recognized metropolitan research university and, therefore, it was performing a governmental function of statewide concern. Defendants further argued that Dr. Kaplan failed to state a claim for tortious interference with business relationships because the research grants and patients at issue belonged to the University and, thus, could not serve as a basis for a valid tortious interference claim against it. Moreover, Defendants argued that Dr. Kaplan had not identified any specific anticipated business relationship with which they interfered; he had not made allegations connecting Defendants' conduct to failed employment opportunities; they could not have interfered with Dr. Kaplan's book deal because they did not know about it; Dr. Kaplan had not alleged any improper motive for their conduct; and Dr. Kaplan failed to allege any improper conduct by Dr. Postel or that he caused Dr. Kaplan any damages sufficient to state a claim against him.

---

[1] Kentucky Rules of Civil Procedure.

In response, Dr. Kaplan asserted that the University was not entitled to immunity because it had not shown it was performing a governmental function of statewide concern. Further, Dr. Kaplan claimed he could properly base his claim on the University's interference with research grants on which he worked and, by cutting him off from his computers, office, and research collaborators, Defendants interfered with those grants, as well as the entirety of his research and scholarship. Dr. Kaplan also alleged that a January 2019 letter from Dr. Ganzel reflected that Defendants were aware of his book deal; that he had a personal relationship with patients due to his expertise in the treatment of their conditions; that the question of whether the University acted with improper motive was a question for the jury and malice could be inferred from the lack of justification for Defendants' actions; and that Dr. Postel was a proper Defendant because he was Dr. Ganzel's superior and participated in the events at issue.

After briefing was complete, the circuit court held a hearing and, on January 13, 2021, granted Defendants' motion. The circuit court held that Dr. Kaplan's asserted business relationships and expectancies were not the type from which he could stand to realize pecuniary gain beyond the scope of his University employment. Rather, such relationships were attendant to that employment. Moreover, to the extent the University was a party to the relationships, it could not

tortiously interfere with its own relationships. Finally, the court found that the University enjoyed immunity.

Dr. Kaplan now appeals. Additional facts will be developed as necessary.

## STANDARD OF REVIEW

"It is well settled in this jurisdiction when considering a motion to dismiss under [CR 12.02] that the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true." *Mims v. Western-Southern Agency, Inc.*, 226 S.W.3d 833, 835 (Ky. App. 2007) (citing *Gall v. Scroggy*, 725 S.W.2d 867, 869 (Ky. App. 1987)). "Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue *de novo*." *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (citing *Morgan v. Bird*, 289 S.W.3d 222, 226 (Ky. App. 2009)). Finally, this Court made clear in *James v. Wilson* that "[t]he court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." 95 S.W.3d 875, 883-84 (Ky. App. 2002) (citations omitted). Accordingly, the critical inquiry is whether "if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?" *Id.* at 884.

## ANALYSIS

As an initial matter, we examine the meaning of the phrase "without prejudice" in the circuit court's dismissal order and any effect it may have on this appeal, as raised by Defendants. While the circuit court dismissed certain bases of Dr. Kaplan's claim with prejudice, other bases of his claim were dismissed without prejudice:

> **WHEREFORE, IT IS HEREBY ORDERED AND ADJUDGED** that the Motion of the Defendants, University of Louisville, Toni M. Ganzel, Ronald I. Paul, and Gregory C. Postel, to Dismiss is **GRANTED**. Dr. Kaplan's claim against Defendant University of Louisville is **DISMISSED WITH PREJUDICE**. To the extent Dr. Kaplan's tortious interference claim against the remaining Defendants is based upon patient care, research grant proposals, participation, or renewals, communication and collaboration with colleagues, research activities, listing on national websites, and attendance at scientific conferences, those claims are likewise **DISMISSED WITH PREJUDICE**. To the extent Dr. Kaplan's tortious interference claim against the remaining Defendants is based upon interference with employment opportunities or his book deal, it is **DISMISSED WITHOUT PREJUDICE**.
>
> This is a final and appealable Order and there is no just cause for delay in its entry or execution.

(Emphasis in original.)

Accordingly, the circuit court dismissed the University with prejudice because it enjoyed governmental immunity but broke down Dr. Kaplan's claim against the remaining Defendants into certain bases. Specifically, the court

-8-

dismissed Dr. Kaplan's tortious interference claim based on patient care or research grants, *with prejudice*, because those relationships were between the University and third parties instead of Dr. Kaplan himself. Likewise, the court dismissed Dr. Kaplan's tortious interference claim based on communications and collaboration with colleagues, research activities, listing on a national website, and attendance at scientific conferences, *with prejudice*, because those are not the types of relationship upon which tortious interference may be based. However, the court dismissed Dr. Kaplan's tortious interference claim based on employment opportunities and his book deal, *without prejudice*, because he did not allege facts sufficient to state a claim.

Dr. Kaplan does not address this distinction in his briefs. However, Defendants argue that Dr. Kaplan's complaint contained a single claim, "Count I" for "tortious interference with business relationships and expectancies," and because the court granted their motion to dismiss Dr. Kaplan's entire complaint with prejudice, any language to the contrary has no effect.

We interpret the circuit court's use of the phrase "without prejudice" to simply indicate that these two bases of Dr. Kaplan's tortious interference claim (employment opportunities and his book deal) were not rendered on the merits because Dr. Kaplan failed to allege facts sufficient to state a claim. "Dismissed without prejudice" is defined as "[r]emoved from the court's docket in such a way

that the plaintiff may refile the same suit on the same claim." *Commonwealth v. Sowell*, 157 S.W.3d 616, 617 (Ky. 2005) (citation omitted). The use of this phrase does not change the fact that the order was final, however. CR 54.01 defines a final order or judgment as "adjudicating all the rights of all the parties in an action or proceeding. . . ." While Dr. Kaplan's claim based on employment opportunities and his book deal was dismissed without prejudice, the January 13, 2021, order of dismissal still adjudicated all rights of all the parties. As such, it was a final appealable order. CR 54.01; *see Wood v. Downing's Admr.*, 62 S.W. 487 (Ky. 1901) (holding an order dismissing without prejudice "fixed absolutely and finally the rights of the parties in this suit in relation to the subject-matter of the litigation, and put an end to the suit. It was a final appealable order.").

With that issue clarified, we now address Dr. Kaplan's two arguments on appeal. First, he argues the circuit court erred in dismissing the University on immunity grounds because the University's actions were not legitimate governmental functions of statewide concern. Second, he claims the circuit court erred in granting Defendants' motion to dismiss because he alleged facts, which, if taken as true, support his intentional interference claim.

## I. The University is entitled to governmental immunity.

Dr. Kaplan claims the University is not entitled to governmental immunity because Defendants' interference with his career could not have a

legitimate statewide function or purpose. Dr. Kaplan further criticizes the circuit court for not explaining why the University's conduct served a legitimate governmental function and was a matter of statewide concern.

In response, Defendants argue that, under *University of Louisville v. Rothstein*, 532 S.W.3d 644, 647 (Ky. 2017), the University is a state agency entitled to governmental immunity and that Kentucky courts have repeatedly recognized that state agencies, like the University, are immune to tort claims like Dr. Kaplan's.

In its order, the circuit court held that the University's employment of Dr. Kaplan as chair of the department, professor, clinician, and research scientist was in furtherance of its mission as a nationally recognized research university. The court further concluded that function was governmental rather than proprietary in nature and was certainly of statewide concern. *See Franklin-Simpson Cty. Bd. of Zoning Adjustment v. Drakes Creek Holding Co., LLC*, 603 S.W.3d 687, 691 (Ky. App. 2020) (citing *Coppage Construction Company, Inc. v. Sanitation District No. 1*, 459 S.W.3d 855, 862 (Ky. 2015)).

"The issue of whether a defendant is entitled to the defense of sovereign or governmental immunity is a question of law." *Univ. of Louisville*, 532 S.W.3d at 647 (citations omitted). Under the law, the University is, indeed, "a state agency entitled to governmental immunity[.]" *Id.* And, such immunity exists

where the University is performing a governmental function of statewide concern. We agree with the circuit court's holding that the University's employment of Dr. Kaplan as chair, professor, clinician, and research scientist was in furtherance of its mission as a nationally recognized research university. That function is governmental rather than proprietary in nature and is of statewide concern. Thus, the University was entitled to governmental immunity. Moreover, Dr. Kaplan cites no evidence that the legislature has limited or waived the University's immunity. *See Withers v. Univ. of Kentucky*, 939 S.W.2d 340, 344 (Ky. 1997) (only the legislature can limit or waive immunity once the judiciary has determined that an entity is entitled to it).

## II. Dr. Kaplan's intentional interference claim

To prevail on a claim for intentional interference, Dr. Kaplan had to show 1) the existence of a valid business relationship or expectancy; 2) that Defendants were aware of this relationship or expectancy; 3) that Defendants intentionally interfered; 4) that the motive behind the interference was improper; 5) causation; and 6) special damages. *Seeger Enterprises, Inc. v. Town and Country Bank & Trust Co.*, 518 S.W.3d 791, 797 (Ky. App. 2017).

First, Dr. Kaplan argues that the circuit court's decision focused solely on the first element – the existence of a valid business relationship or expectancy – and, thus, the other elements are presumed adequately pled. We disagree. While

-12-

the circuit court focused on Dr. Kaplan's relationships, the other elements were also discussed. More importantly, as Dr. Kaplan's brief acknowledges, this Court reviews an order of dismissal under a *de novo* standard of review. As such, we owe no deference to the circuit court and do not "presume" all other elements were adequately pled.

Next, Dr. Kaplan argues the circuit court incorrectly interpreted RESTATEMENT (SECOND) OF TORTS § 766B as requiring him to plead that Defendants interfered with business relationships and expectancies from which he would *realize a pecuniary value*. He claims the RESTATEMENT only requires the "loss of the benefits" of the relationship, not a certain amount of money or value. Moreover, if viewed from his perspective, then Dr. Kaplan claims he properly pled a loss of his ongoing and future patient relationships, scientific research, grant activities, research collaborations, and medical activities, as well as his book deal and employment opportunities.

In response, Defendants argue that "pecuniary value" is defined as the reasonable probability of a future economic benefit, and "personal, social and political relations" are not covered by this definition. Because Dr. Kaplan was on paid leave and never alleged any lost income, Defendants claim he did not suffer a pecuniary loss. Moreover, Defendants argue that Dr. Kaplan's interest in his former work responsibilities at the University are not valid business expectancies

and he is merely trying to repurpose his failed property and liberty interest constitutional claims from his federal case into a tortious interference claim in this state case.

We examine the language of the RESTATEMENT (SECOND) OF TORTS § 766B (1979),[2] which provides:

> One who intentionally and improperly interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

Based on the RESTATEMENT, Dr. Kaplan had to allege that Defendants intentionally and improperly interfered with his valid or expected business relationship and those Defendants were liable for the pecuniary harm resulting from that loss of the benefits of those relationships. While we agree with Dr. Kaplan that he did not need to allege a certain amount of realized money damages to state a claim for tortious interference, he did need to allege that Defendants intentionally interfered with *his* valid or expected business relationships.

---

[2] This section of the RESTATEMENT was adopted by the Kentucky Supreme Court in *National Collegiate Athletic Association By and Through Bellarmine College v. Hornung*, 754 S.W.2d 855 (Ky. 1988).

With that in mind, we analyze the valid or expected relationships with which Dr. Kaplan alleges Defendants interfered and caused him damages. His alleged relations include: (1) a relationship with his medical practice through the Practice and with his patients; (2) a relationship with his ongoing and future scientific research programs, scientific grants, and collaborators; (3) a relationship with employment opportunities; and (4) a relationship with his book deal.

First, there is no factual dispute regarding Dr. Kaplan's relationship with his medical practice and patients. Dr. Kaplan acknowledges that the University is the owner of the Practice and that he treats patients exclusively through the Practice. While Dr. Kaplan's expertise in ophthalmology may have attracted patients to see him, that does not convert those patients into his patients. Dr. Kaplan saw patients through the Practice and, thus, the patients had business relationships with the University, not Dr. Kaplan. Dr. Kaplan's personal physician-patient relationship with those patients does not equate to a business relationship that is actionable under a tortious interference claim.

We reviewed the two cases Dr. Kaplan cites in support of his argument that Defendants intentionally interfered with his physician-patient relationship and find those cases distinguishable. In the unpublished case of *Estela v. Bristol Hospital, Inc.*, 2015 WL 5134798 (Conn. Super. Ct. Jul. 31, 2015), the plaintiff was a physician with medical staff privileges at the defendant hospital

-15-

who alleged that the hospital wrongfully retained his patients or referred his patients to other physicians. However, in that case, the plaintiff/physician was not an employee of the hospital. Here, of course, Dr. Kaplan was an employee of the University through which he saw patients. Thus, the patients were not his and he did not have a business relationship with these patients. And, in *Moore & Associates v. Metropolitan Life Insurance Company*, 604 S.W.2d 487 (Tex. Civ. App. 1980), an association of anesthesiologists sued a medical insurer for tortiously interfering with its physician-patient relationships when the insurer sent letters advising patients that their medical claims would not be paid in full because plaintiff's charges were excessive. In that case, the association of anesthesiologists sued a third party that was not its employer for tortious interference. Again, in this case, Dr. Kaplan sued his employer for intentionally interfering with patients, but the patients were not his and he did not have a business relationship with the patients.

We believe the case of *United States ex rel. Doe v. Jan-Care Ambulance Service*, 187 F. Supp. 3d 786 (E.D. Ky. 2016), is more applicable. In that case, two ambulance services bid for a contract with the Department of Veterans Affairs ("VA"). Trans-Star was located in Kentucky, while Jan-Care was located in West Virginia. Jan-Care won the contract and transported patients from a West Virginia VA hospital to different locations in West Virginia, Ohio, and

Kentucky. Initially, Jan-Care hired Trans-Star to conduct the transports in Kentucky, but later began performing those transports itself. Trans-Star then sued Jan-Care arguing that Jan-Care interfered with its prospective business relationship *with Jan-Care* when Jan-Care began performing the Kentucky transports itself. *Id.* at 793. The court held that, "under Kentucky law, one cannot tortiously interfere with *one's own* prospective business relationship." *Id.* at 794 (emphasis in original). The court explained that, under the RESTATEMENT, one must improperly interfere with *another's* prospective relation to be liable. *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 766B (1979)). Because a crucial element of tortious interference was not satisfied, the court held that the claim must be dismissed. *Id.*

Likewise, Dr. Kaplan's claim based on a relationship with the Practice and patients must be dismissed. The Practice and patients belonged to the University, not Dr. Kaplan. Dr. Kaplan cannot allege that the University interfered with its own business relationship and caused him damages.

Second, Dr. Kaplan alleges that Defendants intentionally interfered with his expectancy for his entire research career and ongoing projects as a tenured professor. He cites *Klaassen v. University of Kansas School of Medicine*, 84 F. Supp. 3d 1228 (D. Kan. 2015), for support. In *Klaassen*, a medical professor sued the university and several other defendants. For his tortious interference claim, the plaintiff/professor alleged that five individual defendants intentionally interfered

-17-

with his business relationship with the National Institutes of Health (NIH) by requesting that the professor be removed as principal investigator on certain NIH grants. However, in that case, the NIH grants funded not only the professor's research, but also part of his salary. *Id.* at 1235. Thus, the court reasoned that the NIH arguably had a business relationship with both the university and the professor.

Here, Dr. Kaplan has not made any such allegations like in *Klaassen*. Instead, he claims that his entire research career is a valid, continuing business expectancy with which Defendants intentionally interfered by suspending and, eventually, terminating him. While such actions prevented Dr. Kaplan from performing his job duties, that is not tortious interference. That is an everyday occurrence for anyone who is placed on leave from their job or terminated.

Next, we address Dr. Kaplan's claim that Defendants intentionally interfered with his employment opportunities and book deal. Under comment c to the RESTATEMENT (SECOND) OF TORTS § 766B, interference with a plaintiff's prospective employment opportunities may give rise to a tortious interference claim. However, the plaintiff must identify with specificity the particular opportunity with which the defendants interfered and how they interfered to state a claim for tortious interference. Here, Dr. Kaplan failed to identify any particular employment opportunity with which Defendants interfered. His complaint merely

states: "[w]hile the . . . prohibitions were pending against Dr. Kaplan, he did inquire/apply for other positions. He was not offered an interview for any position." Complaint ¶ 126. Dr. Kaplan had to allege a more concrete injury than a lost opportunity for unknown "positions." *See Kennedy v. American Airlines Inc.*, 195 F. Supp. 3d 646, 657-58 (D.N.J. 2016). Because he failed to state allegations sufficient to support his tortious interference claim based on employment opportunities and did not attempt to amend his complaint to identify those opportunities, we conclude that he failed to state a claim on this basis.

Regarding Dr. Kaplan's book deal, he had to allege and prove that Defendants intended to interfere with the book deal. This required Defendants to either desire to interfere with the book deal or know their conduct was certain or substantially certain to interfere with it. RESTATEMENT (SECOND) OF TORTS § 766B cmt. d ("The interference with the other's prospective contractual relation is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.").

In his complaint, Dr. Kaplan alleges that Defendants interfered with his "then-current publishing contract" and states:

> 90. Dr. Kaplan and one of his Department colleagues were under contract to write a book relating to their ophthalmology specialty, Uveitis. On December 18, 2018, Dr. Kaplan's colleague was told that he was not allowed to communicate with Dr. Kaplan for any reason

until after the University's "investigation" of Dr. Kaplan was complete.

91.  The interference adversely impacted the ability of Dr. Kaplan and his colleague to meet contract deadlines, such as submitting a finalized chapter author list for the book, given their inability to collaborate on their work for the book.  Dr. Kaplan and his colleague missed the publisher's extended deadline (January 15, 2019) for submitting their list of chapter authors as a result of the continued prohibition of communications with Dr. Kaplan.

In its order, the circuit court held that Dr. Kaplan failed to prove that Defendants intended to interfere with his book deal.  The court discussed the fact that Dr. Kaplan attached the January 2019 letter from Dr. Ganzel to Dr. Kaplan to his complaint and how Dr. Kaplan argued that this letter evidenced Defendants' awareness of the book and their intention to interfere with it.[3]  However, the circuit court held that, even construed in the light most favorable to Dr. Kaplan, the letter

---

[3] The parties do not address whether the January 2019 letter and other documents attached to Dr. Kaplan's complaint converted Defendants' motion to dismiss into a motion for summary judgment under CR 56.  In its order, the circuit court specifically noted that it "can consider Dr. Ganzel's January 2019 letter and other documents attached to the Complaint without converting" Defendants' motion to one for summary judgment, citing *Netherwood v. Fifth Third Bank, Inc.*, 514 S.W.3d 558, 564 (Ky. App. 2017), as support.  We conclude that *Netherwood* is, indeed, supportive.  In that case, the court granted the defendant's motion to dismiss and, on appeal, the plaintiff argued the court applied an incorrect standard because it addressed factual issues and made conclusions based upon facts not in the record.  *Id.*  The Court of Appeals held that the circuit court relied only upon the information attached to the pleadings, including documents attached to the plaintiff's complaint and, thus, the court did not go outside the record to reach any of its conclusions.  *Id.*  Here, the circuit court relied on information contained within the January 2019 letter, which was attached to and referenced in Dr. Kaplan's complaint.  The court did not go outside the record to reach any of its conclusions and, thus, the circuit court properly applied the CR 12.02 standard.

merely references the book and, without more, does not support an inference that Defendants intended to interfere with the book deal. The court further noted that the letter explicitly states that Dr. Kaplan may communicate with University personnel to secure due acknowledgement for the work on the book.

In his brief, Dr. Kaplan argues that the circuit court misunderstood the context of the January 2019 letter. He claims the letter proves Defendants knew about his work on the book and that their prohibitions on him were interfering with Dr. Kaplan's work on the book. Moreover, he claims "acknowledgement" in the academic world simply means that his name could be included on publications and presentations and, thus, the letter proves that the prohibitions on Dr. Kaplan were still in effect.

After review of the record, we agree with the circuit court. While we understand Dr. Kaplan's argument that being prohibited from speaking with his Department colleague may have affected his ability to meet contract deadlines on the book, these allegations do not prove that Defendants knew their conduct was "certain or substantially certain" to interfere with the book deal. RESTATEMENT (SECOND) OF TORTS § 766B cmt. d. Indeed, Dr. Kaplan's complaint merely states that "[t]he interference *adversely impacted*" his and his unnamed colleague's ability to collaborate on the book. That does not equate to allegations that

-21-

Defendants knew that Dr. Kaplan had a book deal, with which they intended to interfere, with an improper motive, and caused the book deal to fail.

## CONCLUSION

Although Dr. Kaplan suggests that his claim should not have been dismissed at the CR 12.02 dismissal stage and he should have been allowed to conduct discovery instead, we disagree. Under CR 12.02, instead of filing an answer to a plaintiff's complaint, a defendant may file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. That motion admits the material facts of the complaint as true. *Upchurch v. Clinton County*, 330 S.W.2d 428, 429-30, 432 (Ky. 1959). And, when ruling on a motion to dismiss, the court's "attention . . . should be directed only to the sufficiency of the allegations in the complaint." *Ewell v. Central City*, 340 S.W.2d 479, 480 (Ky. 1960). However, if a plaintiff would not be entitled to relief under any statement of facts which could be proved in support of the claim, then the law allows for tortious interference claims to fail at the pleading stage. *See, e.g.*, *Seiller Waterman, LLC v. RLB Properties, Ltd.*, 610 S.W.3d 188, 195 (Ky. 2020), *reh'g denied* (Sep. 24, 2020).

In this case, Dr. Kaplan failed to state a claim for tortious interference upon which relief can be granted and for the foregoing reasons, we affirm the circuit court's order.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Dennis D. Murrell
Kevin L. Chlarson
Louisville, Kentucky

BRIEF FOR APPELLEE:

Donna King Perry
Jeremy S. Rogers
Matthew Barszcz
Chase M. Cunningham
Louisville, Kentucky