RENDERED: MAY 10, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0600-MR

RBRC, INC. D/B/A RIVER'S BEND
RETIREMENT COMMUNITY;
SANDY KAMINSKAS; STACY
BULLOCK; AND THE GUARDIAN
FOUNDATION, INC.                                                APPELLANTS


                        APPEAL FROM LYON CIRCUIT COURT
v.                      HONORABLE NATALIE WHITE, JUDGE
                        ACTION NO. 21-CI-00044


DAVID MASSAMORE, AS
EXECUTOR OF THE ESTATE OF
JEAN MASSAMORE                                                      APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, GOODWINE, AND A. JONES, JUDGES.

CETRULO, JUDGE:  Appellants RBRC, Inc. d/b/a River's Bend Retirement Community (the "Retirement Community"), Sandy Kaminskas,[1] Stacy Bullock,[2] and the Guardian Foundation, Inc.[3] (together, "RBRC") appeal the Lyon Circuit Court Order denying their motion to dismiss Appellee David Massamore's ("Massamore") complaint.

## I.    FACTUAL AND PROCEDURAL HISTORY

In March 2020, Jean Massamore ("Decedent"), lived in the Retirement Community.  Around that time, the COVID-19 crisis proliferated in Kentucky, and RBRC began prohibiting access to outside visitors.  However, it continued to host social events for the residents and did not require its employees to wear personal protective equipment.  In late-March 2020, although Decedent had no contact with outside visitors other than RBRC staff, she developed symptoms of COVID-19 and passed away a few days later.  Prior to Decedent's contraction of COVID-19, RBRC had conducted no COVID-19 testing on staff or residents with symptoms.

---

[1] Sandy Kaminskas was an administrator of the Retirement Community during Decedent's residency.

[2] Stacy Bullock, too, was an administrator of the Retirement Community during Decedent's residency.

[3] The Guardian Foundation, Inc. "owned, operated, managed, controlled, and/or provided services to" the Retirement Community.

In May 2021, Massamore, Decedent's son, filed this action as executor of her estate. Massamore's complaint[4] alleged that Decedent's death was due to RBRC's gross negligence. Specifically, the complaint alleged RBRC owed a duty to Decedent to provide custodial care, services, and supervision that a reasonably careful assisted living facility would provide under similar circumstances. Further, the complaint asserted that RBRC failed to deliver such care (breached their duty) and that it was foreseeable such failure would result in serious injury to Decedent. The complaint specified that RBRC "acted with oppression, fraud, and/or malice, or were grossly negligent by acting with wanton or reckless disregard for the health and safety of [Decedent]" and that Decedent suffered injury as a direct and proximate result of such negligence, oppression, fraud, malice, or gross negligence.

In May 2021, RBRC removed the action to the United States District Court for the Western District of Kentucky ("District Court") under the Public Readiness and Emergency Preparedness ("PREP") Act, 42 United States Code ("U.S.C.") §§ 247d-6d, 247d-6e, asserting the PREP Act's exclusive-jurisdiction provision. The next month, Massamore moved to remand the action to state court, arguing the PREP Act did not apply to his claims. In March 2022, the District

---

[4] Massamore amended his complaint in August 2023. References to the complaint refer to the amended complaint.

Court granted Massamore's motion for remand because it found Massamore's negligence claims did not meet the requirements for federal jurisdiction under the PREP Act. *Massamore v RBRC, Inc.*, 595 F. Supp. 3d 594, 599-600 (W.D. Ky. 2022). In April 2022, RBRC appealed that decision to the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit").

In June 2022, the District Court filed the Order of Remand with the circuit court, which stated "[t]he State court may thereupon proceed with such case." Therefore, the circuit court reopened the case. In January 2023, RBRC filed a motion in the District Court to stay the remand, which the District Court denied. RBRC then filed a petition for reconsideration of the motion to stay in the Sixth Circuit, which the Sixth Circuit denied.

By that point, Massamore had served discovery requests on RBRC, and in February 2023, RBRC moved the circuit court to stay the proceedings pending the appeal regarding federal jurisdiction under the PREP Act. Additionally, RBRC moved the circuit court to dismiss Massamore's complaint, claiming lack of subject matter jurisdiction under Kentucky Rule of Civil Procedure ("CR") 12.02(a); immunity under the PREP Act; federal defensive preemption; failure to exhaust administrative remedies; and Kentucky Revised Statute ("KRS") 39A.275, the Kentucky COVID-19 Immunity Act ("KCIA").

In March 2023, the circuit court heard the motions and RBRC acknowledged the Sixth Circuit had denied its petition to reconsider the District Court's denial of the motion to stay and therefore considered its motion to stay in the circuit court a "non-issue." Further, RBRC asserted that it was not likely to be successful on the appeal to the Sixth Circuit regarding federal jurisdiction, so it stated that filing a motion to dismiss in the state court proceedings was appropriate. As to the motion to dismiss, RBRC argued Massamore's claims were barred by immunity under KCIA and KRS 39A.280, the Kentucky Emergency Management Act ("KEMA").

In April 2023, the circuit court entered its order denying RBRC's motion to stay the proceedings and motion to dismiss. The court reiterated RBRC's acknowledgement that the Sixth Circuit had denied its petition for reconsideration regarding the stay; therefore, the motion to stay was a "non-issue." Further, the court concluded that KCIA and KEMA have an exception to immunity for claims of gross negligence. As Massamore alleged gross negligence in his complaint, the circuit court found it was too early in the proceedings (pre-discovery) to determine whether KCIA and KEMA immunity applied.

The court noted that because "[t]here is no sharp, well-defined, dividing line between simple negligence and gross negligence[,]" the degree of negligence is a question to be resolved by a jury, citing *Darnell v. Hamilton*, 358

S.W.2d 361, 362 (Ky. 1962), and *Douglas v. Wood*, 254 S.W.2d 490, 492 (Ky. 1953). The court further explained that negligence "usually cannot be presumed and where evidence of negligence is so unsatisfactory as to require speculation, surmise or guesswork as to how the injury occurred, the case is not for the jury but for the court, which should hold as a matter of law that defendant is not liable[,]" citing *Hollon v. Greyhound Corporation*, 272 S.W.2d 329, 330-31 (Ky. 1954) (citations omitted). However, because "at this juncture in the case" there had not been any discovery conducted, the court concluded that it could not determine whether RBRC was immune from liability without first ascertaining whether the conduct alleged could be viewed as gross or ordinary negligence. To do so, discovery was required, and dismissal was inappropriate.

As to RBRC's immunity claims under the PREP Act, the circuit court stated that "covered countermeasures" were limited to "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 . . . or any device *used in the administration of such product*." (Emphasis added.) The circuit court did not find Massamore's allegations regarding *lack of* medical equipment and quarantine/distancing procedures to fall under "covered countermeasures." The court emphasized that other cases supported such finding: that the PREP Act protected covered persons who employ countermeasures, not

those who decline to employ them, citing *Sherod v. Comprehensive Healthcare Management Services, LLC*, No. 20-CV-1198, 2020 WL 6140474, at \*7 (W.D. Pa. Oct. 16, 2020), and *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 529 (D.N.J. 2020) ("Nothing in the language of the [PREP] Act suggests that it was intended to more broadly displace state-law causes of action for, *e.g.*, malpractice or substandard care – even if proper care possibly *would* have entailed administration of such countermeasures."). As such, the court concluded the PREP Act did not apply to Massamore's claims; therefore, RBRC was not immune under the PREP Act.

In July 2023, the Sixth Circuit issued its opinion affirming the District Court's remand to state court, finding the PREP Act did not apply to Massamore's claims. *Massamore v. RBRC, Inc.*, No. 22-5381, 2023 WL 4505074 (6th Cir. Jul. 6, 2023).

RBRC appealed the circuit court's order, claiming it erred in denying the motion to dismiss because the court lacked subject matter jurisdiction. Specifically, RBRC argues the court lacked subject matter jurisdiction because: (A) the action was still pending in the Sixth Circuit or, alternatively, (B) RBRC was entitled to immunity from the suit under the PREP Act, KCIA, and KEMA.

## II.   STANDARD OF REVIEW

It is well established that a court should not dismiss an action for failure to state a claim unless the pleading party

-7-

appears not to be entitled to relief under any set of facts which could be proven in support of his claim. *Weller v. McCauley*, 383 S.W.2d 356 (Ky. 1964). In ruling on a motion to dismiss, the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true. *Mims v. Western-Southern Agency, Inc.*, 226 S.W.3d 833, 835 (Ky. App. 2007). Therefore, "the question is purely a matter of law." *James v. Wilson*, 95 S.W.3d 875, 884 (Ky. App. 2002). Accordingly, the trial court's decision will be reviewed *de novo. Revenue Cabinet v. Hubbard*, 37 S.W.3d 717, 719 (Ky. 2000).

*Morgan v. Bird*, 289 S.W.3d 222, 226 (Ky. App. 2009).

Likewise, this Court reviews a circuit court's determination as to subject matter jurisdiction *de novo*. *Harrison v. Park Hills Bd. of Adjustment*, 330 S.W.3d 89, 93 (Ky. App. 2011) (citation omitted).

## III. ANALYSIS

### A. Subject Matter Jurisdiction while Appeal Pending in Federal Court

First, RBRC claims the circuit court's order denying its motion to dismiss is void because the court did not have jurisdiction to rule on the motion while the federal appeal regarding jurisdiction was pending in the Sixth Circuit. We disagree.

While RBRC is correct that the filing of a notice of removal effects "the removal and the State court shall proceed no further unless and until the case is remanded" – 28 U.S.C. § 1446(d) – once the federal court remands the case, the

circuit court regains jurisdiction and may "thereupon proceed with such case." 28 U.S.C. § 1447(c). *See also Bryan v. BellSouth Commc'ns, Inc.*, 492 F.3d 231, 241 (4th Cir. 2007) (citing 28 U.S.C. 1447(c)) ("the state court may proceed with a case once the [D]istrict [C]ourt mails a certified copy of the remand order to the state court").

Here, the District Court remanded the case in March 2022 and filed the Order of Remand with the circuit court in June 2022, which stated "[t]he State court may thereupon proceed with such case." As such, the circuit court reopened the case. The circuit court did not rule on RBRC's motion to dismiss until nearly a year after it received the Order of Remand and reopened the case. Further, as noted, the District Court denied RBRC's motion to stay the remand, and the Sixth Circuit denied RBRC's motion to reconsider the District Court's decision.

RBRC attempts to compare this case to *Kern v. Huidekoper*, 103 U.S. 485, 13 Otto 485, 26 L. Ed. 354 (1880). However, we do not find *Kern* dispositive. There, the plaintiffs filed a petition to remove the action to federal court. *Kern*, 103 U.S. at 486. The United States Supreme Court explained that such removal granted the federal court jurisdiction and the state court lost jurisdiction. *Id.* at 491. The Supreme Court stated,

> when a case has been properly removed from a State into a United States court, and the State court still goes on to adjudicate the case, against the resistance of the party at whose instance the removal was made, such action on its

-9-

part is a usurpation, and the fact that such a party has, after the removal, contested the suit, does not, after judgment against him, constitute a waiver on his part of the question of the jurisdiction of the State court to try the case.

*Id.* at 492 (citations omitted).

RBRC argues that, here, the circuit court's reopening of the case and its subsequent order denying RBRC's motion to dismiss "usurped" the "then-current federal jurisdiction," pursuant to *Kern.* We disagree. Unlike here, the federal court in *Kern* never remanded the case to state court. As discussed, the federal court retains jurisdiction only until it remands the case to state court. *See Bryan*, 492 F.3d at 241 (citation omitted) ("[I]t is clear that the state court regained jurisdiction when the [D]istrict [C]ourt remanded [the case] to state court."). Here, the District Court entered the Order of Remand to the circuit court in June 2022 and denied RBRC's motion to stay the remand. As such, the circuit court regained jurisdiction in June 2022, a year before it ruled on RBRC's motion to dismiss.

B. **Subject Matter Jurisdiction – Immunity claims**

Second, RBRC argues it is immune from Massamore's claims under (1) the PREP Act, (2) KCIA, and (3) KEMA.

1. **The PREP Act**

RBRC asserts that Massamore's claims invoke the PREP Act. Specifically, it argues that the PREP Act provides RBRC with immunity from suit, preempts Massamore's claims, and requires Massamore to exhaust administrative

-10-

remedies, which it claims he failed to do. However, Massamore emphasizes that three separate courts (the circuit court, District Court, and Sixth Circuit) have explained that the PREP Act does not apply to Massamore's claims. Moreover, Massamore asserts that he made no allegations regarding the use or administration of "covered countermeasures."

The PREP Act provides that

**(a) Liability protections**

**(1) In general**
. . . a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss[5] caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.

. . .

(2)(B) The immunity under paragraph (1) [above] applies to any claim for loss that has a causal relationship with *the administration to or use by an individual of a covered countermeasure*, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.

42 U.S.C. § 247d-6d(a)(1) and (a)(2)(B) (emphasis added).

---

[5] "'[L]oss' means any type of loss, including . . . death[.]" 42 U.S.C. § 247d-6d(a)(2)(A).

-11-

A "covered countermeasure" is defined as

(A) a qualified pandemic or epidemic product (as defined in paragraph (7)); (B) a security countermeasure (as defined in section 247d-6b(c)(1)(B) of this title); (C) a drug (as such term is defined in section 201(g)(1) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 321(g)(1))[)], biological product (as such term is defined by section 262(i) of this title), or device (as such term is defined by section 201(h) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. 321(h)) that is authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug, and Cosmetic Act; or (D) a respiratory protective device that is approved by the National Institute for Occupational Safety and Health under part 84 of title 42, Code of Federal Regulations (or any successor regulations), and that the Secretary determines to be a priority for use during a public health emergency declared under section 247d of this title.

42 U.S.C. § 247d-6d(i)(1) (footnote omitted).

RBRC claims the PREP Act applies because "management and operation of a countermeasure program" include "the way in which testing is applied to quarantine/isolation policies in order to 'diagnose, mitigate, and prevent' the transmission of COVID-19." RBRC claims it provided such services; therefore, Massamore's suit speaks to RBRC's management and operation practices and is therefore barred.

However, Massamore contends that he has never claimed Decedent's death was the result of the use or administration of "covered countermeasures." Instead, he asserts that his claims derived from RBRC's failure to implement

proper infection control procedures.  Further, he claims the PREP Act is inapplicable "where a plaintiff's claim is premised on a failure to take preventative measures to stop the spread of COVID-19, as here, and where none of the alleged harm was causally connected to the administration or use of any countermeasure, which is the focus of the PREP Act," citing *Gwilt v. Harvard Square Retirement and Assisted Living*, 537 F. Supp. 3d 1231, 1240 (D. Colo. 2021).[6]

> As the Sixth Circuit explained in RBRC's federal appeal,
>
> [i]n March 2020, the HHS [Department of Health and Human Services] Secretary issued a declaration under the PREP Act declaring COVID-19 a public health emergency and recommending "the manufacture, testing, development, distribution, administration, and use of the Covered Countermeasures," which included "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 ("Declaration"), 85 Fed. Reg. 15, 198, 15, 201-202 (Mar. 17, 2020).

*Massamore*, 2023 WL 4505074, at *2.

---

[6] Additionally, Massamore lists numerous federal cases that found state law negligence and wrongful death claims relating to a nursing home's failure to take steps to prevent the spread of COVID-19, including failure to use personal protective equipment, did not fall within the scope of the PREP Act.  *See, e.g.*, *Sherod*, 2020 WL 6140474, at *9; *Est. of Maglioi*, 478 F. Supp. 3d at 531; and *Fortune v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2318-HLT-JPO, 2020 WL 4815097, at *8 (D. Kan. Aug. 19, 2020).

Finding Massamore's claims did not include reference to such "countermeasures," the Sixth Circuit denied RBRC's arguments that the PREP Act applied to Massamore's claims:

> In *Hudak* [*v. Elmcroft of Sagamore Hills*, 58 F.4th 845 (6th Cir. 2023)], we rejected the very arguments that the defendants [RBRC] now raise and held that, because the plaintiff did not allege that the defendants' administration or use of a COVID-19 countermeasure involved willful misconduct, "the PREP Act d[id] not 'provide[ ] the exclusive cause of action for the claim asserted' and d[id] not completely preempt [the plaintiff]'s state-law claims." 58 F.4th at 857 (second alteration in original) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). Like the defendants in *Hudak*, the defendants here argue that, because the PREP Act created an exclusive federal cause of action, "all actions within that scope (*e.g.*, tort claims arising from countermeasure administration in programs or facilities) are completely preempted regardless of standard of liability." In rejecting this argument, we explained that the plain text of the [PREP] Act created an exclusive cause of action only for claims of willful misconduct rather than any claim implicating the [PREP] Act and that the doctrine of complete preemption requires courts to look at the elements of the state law claims "to determine whether federal law provides a substitute cause of action for the claims." *Id.* at 855. Nowhere in the complaint did Massamore allege that the defendants acted "intentionally to achieve a wrongful purpose," "knowingly without legal or factual justification," or "in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." 42 U.S.C. § 247d-6d(c)(1)(A). He therefore could not have brought an action under the PREP Act, and his claims are not completely preempted. *See Hudak*, 58 F.4th at 855; *see also Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 61-62 (2d Cir. 2023); *Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 245 (5th Cir. 2022);

> *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 411 (3d Cir. 2021).

*Massamore*, 2023 WL 4505074, at *3.

However, RBRC argues the PREP Act applies to claims for loss causally relating to the "administration" of a countermeasure – not to the countermeasure alone.  RBRC encourages this Court to look to *M.T. as next friend of M.K. v. Walmart Stores, Inc.*, 528 P.3d 1067, 1070-71, 1079 (Kan. App. 2023) (finding the PREP Act's causal language applied to the "administration" of the vaccine countermeasure and dismissing the plaintiff's claims) and *Storment v. Walgreen, Co.*, No. 1:21-CV-00898 MIS/CG, 2022 WL 2966607 (D.N.M Jul. 27, 2022) (dismissing case under PREP Act immunity because alleged injuries sustained in parking lot fall after receiving a COVID-19 vaccine constituted a claim for loss "relating to" the administration of a countermeasure).

However, importantly, those cases involved countermeasures – vaccines – unlike Massamore's claims.  Here, Massamore alleged RBRC was grossly negligent for failing to implement safety procedures during the COVID-19 outbreak, including use of personal protective equipment, testing protocols for patients and staff with symptoms, and isolation/quarantining procedures.  As the Sixth Circuit explained, these claims do not fall under the PREP Act's definition of "countermeasures."

As such, Massamore's claims did not involve countermeasures and did not invoke the PREP Act;[7] therefore, the PREP Act's immunity provisions do not apply to RBRC.

2. **KCIA**[8]

Next, RBRC claims that Massamore's complaint fails to allege facts that could constitute gross negligence. However, Massamore asserts that his complaint appropriately alleged gross negligence, which renders KCIA's immunity provisions inapplicable, and he therefore is entitled to pursue discovery.

KCIA provides a defense for certain "essential service providers" but "[n]othing in this subsection limits any liability of an essential service provider for gross negligence, or wanton, willful, malicious, or intentional misconduct." KRS 39A.275(3). Thus, the issue is whether Massamore adequately alleged gross negligence in his complaint. We find he did.

Our Supreme Court has recognized that gross negligence is "a wanton or reckless disregard for the lives, safety or property of other persons." *Horton v.*

---

[7] Likewise, because Massamore's claims did not invoke the PREP Act, RBRC's arguments that the PREP Act preempted Massamore's state law claims and that Massamore failed to exhaust administrative remedies under the PREP Act are meritless.

[8] Although KCIA was repealed, effective December 2023, it was valid at the time of the alleged actions and during the circuit court's proceedings. *Cf. Orchard v. W. Energy Prod., LP*, No. 2019-CA-000066-MR, 2019 WL 5293489, at *2 (Ky. App. Oct. 18, 2019) (finding the alleged actions occurred prior to the statute's repeal; therefore, the circuit court "erred in finding [the plaintiff] lacked" standing under the statute).

*Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985). Moreover, "[e]ven where a single act of negligence might not constitute gross negligence, gross negligence may result from the several acts." *Id.* at 388 (citation omitted). Policies and procedures of a company may be a basis for a finding of gross negligence. *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 338 (Ky. 2014) (citing *id.*). As the circuit court noted, "there is no sharp, well-defined, dividing line between simple negligence and gross negligence," thus, it is a question for the jury. *Zewoldi v. Transit Auth. of River City*, 553 S.W.3d 841, 850 (Ky. App. 2018) (citations omitted).

As to the sufficiency of such allegations, our Supreme Court has explained that in Kentucky, the sufficiency of a pleading is determined under a commonsense standard to do substantial justice. *McCollum v. Garrett*, 880 S.W.2d 530 (Ky. 1994); *see also* CR 8.06. To meet such standard, a pleading must simply identify the basis of the claim. *Nat. Res. & Env't Prot. Cabinet v. Williams*, 768 S.W.2d 47, 51 (Ky. 1989). In making this determination, wide latitude is granted in the exact language used in pleadings, and liberal interpretation is to be used to construe a pleading as stating a cause of action or a defense. *See W.R. Willett Lumber Co., Inc. v. Hall*, 375 S.W.2d 266 (Ky. 1964).[9]

---

[9] RBRC asserts that *Tipton v. St. Joseph Health Sysyems, Inc.*, No. 2021-CA-0985-MR, 2022 WL 2541827 (Ky. App. Jul. 8, 2022), *review denied and ordered depublished* (Dec. 7, 2022), is dispositive here; however, we disagree. RBRC claims that KCIA barred the plaintiff's claims

As detailed, here, the complaint alleged RBRC owed a duty to Decedent to provide custodial care, services, and supervision; and that RBRC breached that duty. Further, Massamore asserted that it was foreseeable such breach would result in serious injury to Decedent. The complaint specified that RBRC was "grossly negligent by acting with wanton or reckless disregard for the health and safety of [Decedent]" and that Decedent suffered injury as a direct and proximate result of such gross negligence. Additionally, Massamore's complaint alleged that RBRC failed to protect residents from COVID-19. For example, when RBRC shut down the Retirement Community to visitors, it continued to hold group events and allowed residents to congregate together. Further, staff did not use personal protective equipment such as masks and gloves when interacting with the residents, and RBRC failed to timely implement testing of staff and residents.

The pleading identified the basis of a gross negligence claim and provided facts to support such contention. As we are to grant wide latitude when reviewing this common sense standard, we find Massamore sufficiently alleged gross negligence against RBRC to withstand the motion to dismiss. *See W.R.*

---

despite the plaintiff's contention the defendants were grossly negligent; however, there, this Court held the plaintiffs were "not asserting that they presented any evidence of gross negligence capable of withstanding summary judgment . . . . Indeed, they cite no such evidence. Instead, the crux of their argument is that they would like more time to gather more evidence in support of their claims." *Tipton*, 2022 WL 2541827, at *5. Here, however, Massamore does assert that he adequately alleged gross negligence, cites support, and argues KCIA's immunity provisions do not apply because he sufficiently pled gross negligence.

-18-

*Willett Lumber Co. v. Hall*, 375 S.W.2d 266 (Ky. 1964). As Massamore's claims of gross negligence are adequately alleged, KCIA's immunity provisions do not apply.

### 3. KEMA

Finally, RBRC argues it is immune from Massamore's claims under KEMA. Again, Massamore disagrees, noting that such immunity does not apply where gross negligence is alleged. Like KCIA, KEMA limits immunity in cases of gross negligence: "neither the state nor any political subdivision of the state nor, except in cases of gross negligence or wanton, willful, malicious, or intentional misconduct . . . shall be liable for the death of or injury to persons, or for damage to property, as a result of that activity." KRS 39A.280(3).

As discussed, Massamore adequately alleged gross negligence, rendering KEMA's immunity provisions inapplicable at this stage in the proceedings.

## VI. CONCLUSION

The Lyon Circuit Court had jurisdiction to enter its order denying RBRC's motion to dismiss Massamore's complaint. Additionally, the motion to dismiss was properly denied because, at this stage in the proceedings, it is not clear that he would not to be entitled to relief under any set of facts which could be

proven in support of his claim.  For the foregoing reasons, we AFFIRM the Lyon Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANTS:

Clay A. Edwards
Nicholas J. Davis
Louisville, Kentucky

Teresa Pike Tomlinson
Columbus, Georgia

BRIEF FOR APPELLEE:

Lindsy Lopez
Tad Thomas
Julie Anderson
Louisville, Kentucky