*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* R DOMBACK-HANSEN, Minor.

UNPUBLISHED
February 13, 2025
8:56 AM

No. 371887
Kent Circuit Court
Family Division
LC No. 22-051318-NA

Before: BOONSTRA, P.J., and M. J. KELLY and MALDONADO, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to the minor child, RD, under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent gave birth to RD in early 2022; RD tested positive for methamphetamine at birth. Respondent identified Ronald Dombak as RD's putative father. Respondent is also the mother of another child with a different father. In April 2022, Children's Protective Services (CPS) received a complaint that Dombak was stalking respondent. They also received information that Dombak had "held a screwdriver to [RD] and told [respondent] that if she moved, he would kill [RD]." Soon thereafter, respondent tested positive for methamphetamine, amphetamines, and THC. In June 2022, the Department of Health and Human Services (DHHS or petitioner) filed a petition alleging that respondent had admitted to CPS that she was using methamphetamine with RD present. The DHHS filed an additional petition later in June 2022, alleging that respondent and Dombak had been involved in several violent altercations while RD was present. Respondent was provided with information on how to file for a personal protection order but refused to do so. The trial court authorized both petitions and ordered that RD be removed from respondent's custody and placed in a foster home with fictive kin.

After an adjudication and dispositional hearing in August 2022, respondent was given a court-ordered treatment plan that required her to complete psychological and substance-abuse assessments and follow the assessors' recommendations, complete a domestic violence program, and participate in random drug screens. Respondent's needs were identified as including

"substance abuse, domestic relations, housing, emotional stability, social support system, communication, and employment."

The trial court continued to hold review hearings and permanency planning hearings until May 2024, when the goal for RD was changed to adoption because of respondent's ongoing barriers of substance abuse, lack of appropriate housing, emotional instability, and lack of social support systems. In July 2024, the trial court held a termination hearing. At the time of the termination hearing, respondent was living with the father of her other child, with whom she also had a history of violent altercations and substance abuse. A foster-care case manager testified that "it could be anywhere from six months to a year" until respondent was able to rectify the conditions that had led to adjudication. The case manager also testified that respondent would have to demonstrate a consistent "six months of negative drug screens, stable housing, and a well-thought out [sic] budget, and resource availability."

After the hearing, the trial court entered an order terminating respondent's parental rights to RD as described. This appeal followed.

## II. STANDARD OF REVIEW

We review for clear error both a trial court's decision that a statutory ground for termination has been proven and the court's decision regarding the minor child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App 713, 733; 858 NW2d 143 (2014). "Whether proceedings complied with a party's right to due process presents a question of constitutional law that we review de novo." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009).

Unpreserved issues, such as respondent's reasonable-efforts argument, are reviewed for plain error. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999); see also *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 294 n 3; ___ NW3d ___ (2023).

## III. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred by holding that statutory grounds for termination had been proven. She also argues that she had benefited from the majority of the services provided to her, and that petitioner did not make reasonable efforts to assist her with finding appropriate housing, which she argues was the sole barrier that still needed to be rectified at the time of termination. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) when 182 or more days have passed since the initial disposition order, and "the totality of the evidence amply supports that [respondent] had not

accomplished any meaningful change in the conditions" that led to the adjudication, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), and would not be able to rectify those conditions within a reasonable time.

"When a child is removed from a parent's custody, the agency charged with the care of the child is required to report to the trial court the efforts made to rectify the conditions that led to the removal of the child." *In re Plump*, 294 Mich App 270, 272; 818 NW2d 119 (2011). Reasonable efforts include the creation of a case service plan, which "means the plan developed by an agency . . . that includes services to be provided by and responsibilities and obligations of the agency and activities, responsibilities, and obligations of the parent." MCL 712A.13a(1)(d). More specifically, the case service plan must include a "[s]chedule of services to be provided to the parent, child, and if the child is to be placed in foster care, the foster parent, to facilitate the child's return to his or her home or to facilitate the child's permanent placement." MCL 712A.18f(3)(d).

In this case, the conditions that led to adjudication included respondent's issues with substance abuse, domestic violence, mental health, employment, and housing. Contrary to respondent's argument, housing was *not* the sole remaining barrier at the termination hearing. The trial court found that respondent had failed to rectify many of the issues that led to adjudication, most notably substance abuse, domestic violence, and mental health, as well as housing. The record supports the trial court's findings. The foster-care case manager testified at the termination hearing that respondent had missed "about 50 percent" of her drug screens, and that 20% of her drug screens in May 2024 were positive for marijuana, with at least one positive drug screen for cocaine. The case manager further testified that, although the DHHS had provided respondent with gas cards, respondent told her that the missing drug screens were due to transportation issues. Respondent argues that her marijuana use should not be a factor in favor of termination because she never used it in front of RD and recreational marijuana was legal at the time of the trial court proceedings. However, the case manager affirmed during the termination hearing that, despite the legality of the substance, respondent was expected to abstain from using marijuana along with other drugs and alcohol.

Regarding domestic violence and respondent's volatile relationships, the case manager testified that, despite the fact that respondent "continued to refrain from contact with [Dombak]," she was still concerned that respondent "hasn't been completely open" about their communication. She testified that, although respondent graduated from the YWCA Domestic Violence Program, there were still "substantial items she could work on regarding her domestic relations, especially with her current domestic relations." The case manager testified that respondent was living with the father of her other child, and the lawyer-guardian ad litem (L-GAL) presented a report that demonstrated that this man had also been abusive toward respondent.

At the final permanency planning hearing, the case supervisor testified that respondent had been evicted from transitional housing because she failed to follow the community rules. During the termination hearing, the case manager agreed that respondent's choices that led to her eviction were tied "into her emotional stability or lack thereof." She also testified that she was concerned about how respondent's use of marijuana and cocaine might interact with respondent's prescribed mental health medications, and opined that respondent's progress regarding her mental health issues was poor. The case manager also noted that respondent had a poor social support network that consisted almost entirely of the abusive fathers of her children.

-3-

The case manager testified that respondent's living condition was not an "optimal situation." The L-GAL's report demonstrated that the father of respondent's other child "admitted to having pancreatitis from drinking 'a fifth of booze a day' "; "drinks at least three to four beers a day if he 'gets money' "; and "used cannabis in the morning and at nighttime." The case manager testified that respondent felt an obligation to help him with rent instead of "saving that money for her own independent housing." The case manager also affirmed that respondent had never expressed a desire to have independent housing. In fact, the case manager testified that respondent had been approved for a room with a housing program, but she gave it up to live with the father of her other child. Accordingly, the trial court found by clear and convincing evidence that respondent failed to overcome several of her barriers, including her housing barrier. This finding was not clearly erroneous. See *B & J*, 279 Mich App at 23.

Moreover, the record shows that the DHHS made reasonable efforts to provide respondent with services to find appropriate housing. The case manager testified that respondent "was referred to Health Net Services. We also assisted her with rent. We provided her with housing voucher paperwork, and she's also been able to utilize the source through her current job." She affirmed that the DHHS had provided respondent "with a few weeks' worth of rent" and that respondent had been referred to the Salvation Army to help her access housing resources. Respondent was also given assistance applying for Section 8 housing. Accordingly, respondent had not established plain error based on petitioner's failure to make reasonable efforts at reunification. See *Carines*, 460 Mich at 763.

Considering respondent's failure to rectify the conditions that led to adjudication and the duration of the proceedings, the trial court did not err by finding that there was no reasonable likelihood that respondent would rectify these barriers within a reasonable time. See *BZ*, 264 Mich App at 296-297. Therefore, the trial court did not err by finding that termination of mother's rights was proper under MCL 712A.19b(3)(c)(*i*).[1] *Olive/Metts*, 297 Mich App at 40.

IV. BEST-INTEREST DETERMINATION

Respondent also argues that the trial court erred by holding that termination of her parental rights was in RD's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Olive/Metts*, 297 Mich App at 40. When considering best interests, the focus is on the child's interests rather than the parent's interests. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "The trial court should weigh all the evidence available to determine the child's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). When deciding whether termination is in the child's best interests, the trial court "may consider the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The trial court can also consider the likelihood that "the child could be returned to [the] parent's home

---

[1] Given this conclusion, we need not address respondent's arguments related to the other statutory grounds for termination. See *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

The record shows that the trial court properly focused on RD's best interests, rather than respondent's interests in reuniting with RD in the future. See *Moss*, 301 Mich App at 87. The trial court considered the fact that RD's well-being could not be reasonably ensured in light of the fact that respondent still struggled with substance abuse, inadequate housing, and an inadequate social support system. See *VanDalen*, 293 Mich App at 142. The trial court also considered the advantages of RD's placement in his foster home over placement with respondent. See *Olive/Metts*, 297 Mich App at 41-42. Although respondent had made partial progress with the case service plan, the trial court was required to weigh *all* the evidence available to determine RD's best interests. See *White*, 303 Mich App at 713. The trial court did not err in finding that the majority of the evidence demonstrated that placement with respondent was not in RD's best interests.

Respondent argues that the trial court did not consider placing RD with relatives and ignored testimony regarding RD's placement with fictive kin as well as RD's bond with his half-sibling. The record does not support respondent's argument. In fact, in February 2024, RD's fictive kin placement "put in their 30-day notice," and the DHHS had to find RD another placement in nonrelative foster care. As for placing RD with his half-sibling, the case manager testified that placement with respondent and the father of her other child was not in RD's best interests because of the ongoing substance-abuse issues in the home. The case manager denied that she would feel comfortable returning RD back to respondent's care considering her current housing situation. Accordingly, the trial court did not err by finding that termination was in RD's best interests despite the existence of a bond between RD and his half-sibling. See *BZ*, 264 Mich App at 296.

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Allie Greenleaf Maldonado